## COURT OF APPEALS,

June 14, 1914.

## THE PEOPLE v. GEORGE GRUTZ.

(212 N. Y. 72.)

(1.) ARSON*—EVIDENCE.

It is not permitted to show the former character of a person on trial for a crime or to prove his guilt of other crimes merely for the purpose of raising a presumption that he who would commit them would be more apt to commit the crime in question. There are, however, certain recognized exceptions to the general rule; and evidence of other crimes is usually competent to prove the specific crime when it tends to establish a common scheme or plan embracing the commission of two or more crimes so related to each other that proof of one tends to establish the others.

(2.) SAME—WHEN OBJECTIONS TO INDICTMENT FOR ARSON MUST BE RAISED BY DEMURRER.

The specification of the indictment is that defendant and another willfully and feloniously set fire to and burned a certain dwelling house in which dwelling there was at the time some human being. The sufficiency of the indictment is challenged on two grounds: 1. That it does not state in precise terms or by description where the house was located. 2. That it does not identify the person in the dwelling by name or otherwise. *Held,* that both of these objections could have been raised by demurrer (Code Crim. Pro. § 323, sudb. 2), but they were not available to the defendant at the trial or on his motion in arrest of judgment (Code Crim. Pro. § 331), and for that reason they cannot be considered on this appeal.

(3.) SAME—CONSPIRACY TO COMMIT ARSON—WHEN EVIDENCE RELATING TO OTHER INCENDIARY FIRES IMPROPERLY ADMITTED.

The case was tried for the prosecution upon the theory that the

* See Notes on Arson, Vol. 24, p. 412; an attempt to commit Arson, Vol. 30, p. 247.

defendant and one Stein had entered into a conspiracy to induce various persons to insure their household effects for the purpose of having them damaged or destroyed by fires which were to be set by Stein. The prosecution adduced evidence from Stein of nine other incendiary fires in which the defendant is said to have been implicated and of one fire in the defendant's own premises with which Stein had no connection. *Held*, that as it appears that Stein had nothing to do with the latter fire, and there is no evidence that it was of incendiary origin except by inference, it was irrelevant to the question whether the defendant and Stein had entered into a conspiracy which resulted in the fire charged in the indictment. Each of the nine other fires was a separate and independent transaction entered into as the occasion arose and not in pursuance of any preconcerted general plan or design. There was between them no such relation of time, place or circumstance that the bare evidence as to the origin of any one of these fires in and of itself tended to prove the origin of the fire for which defendant was indicted. Hence this class of evidence was improperly received. (*People* v. *Duffy*, 212 N. Y. 57, distinguished.)

(4.) SAME—ERRONEOUS EXCLUSION OF QUESTIONS INTENDED TO SHOW HOSTILITY OF WITNESSES TO DEFENDANT.

Witnesses were called by whom the defendant's counsel sought to prove hostile expressions and acts against the defendant which the witnesses for the prosecution had, on their cross-examinations, either denied or explained. The court ruled against him before he had completed his question. *Held*, that evidence of this character is generally competent, and that the counsel should have been permitted to state his question to his witness.

(5.) SAME—WHEN OPINION OF FIRE MARSHAL AS TO ORIGIN OF FIRE ERRONEOUSLY RECEIVED.

The district attorney called as a witness an assistant fire marshal. In his official capacity he had visited the premises where the fire in question occurred and investigated the fire. He was asked to give his opinion of the origin of the fire, and in answer he enumerated a number of facts which he stated " indicated to my mind the fire was set." *Held*, that this is not a case for expert opinion. The physical facts, which are the subject of investigation, are so simple that they can be readily understood when properly described, and it is then for the jury to draw the appropriate conclusion.

*People* v. *Grutz*, 161 App. Div. 924, reversed.

APPEAL from an order of the Appellate Division of the Supreme Court in the first judicial department, entered February 13, 1914, which affirmed a judgment rendered at a Trial Term for the county of New York upon a verdict convicting the defendant of the crime of arson in the second degree.

The facts, so far as material, are stated in the opinion.

*Robert H. Elder* for appellant. Nine offenses other than the one mentioned in the indictment, having no necessary connection with one another, but each being an independent transaction, were proved by the prosecution. This was error. (*People* v. *Zucker*, 20 App. Div. 363; *People* v. *Molineux*, 168 N. Y. 304; Underhill on Ev. 108, § 88; *People* v. *Sekeson*, 11 App. Div. 490.) The leading witnesses against the defendant, except Stein, were Gold, Mrs. Gold and one Roch. The defendant sought to prove their hostility and bias, which the court erroneously refused to permit. (*People* v. *Webster*, 139 N. Y. 73; *People* v. *Brooks*, 131 N. Y. 321; *Brink* v. *Stratton*, 176 N. Y. 150.) It was error to permit De Malignon to testify to his opinions as to the incendiary nature of the fire in corroboration of Stein and Gold. (*Dougherty* v. *Milliken*, 162 N. Y. 527; *Schutz* v. *Union Railway Co.*, 183 N. Y. 33.)

*Charles S. Whitman, District Attorney* (*Robert S. Johnstone, Royal H. Weller* and *Stanley L. Richter* of counsel), for respondent. There was no error in permitting Stein to give evidence concerning other fires which he set at defendant's instance. (Wigmore on Ev. § 215; *People* v. *McLaughlin*, 150 N. Y. 365; *People* v. *Peckens*, 153 N. Y. 576; *People* v. *Van Tassel*, 156 N. Y. 561; *People* v. *Place*, 157 N. Y. 584; *People* v. *Molineux*, 168 N. Y. 264; *People* v. *Doty*, 175 N. Y. 164; *People* v. *Cahill*, 193 N. Y. 232; *People* v. *Katz*, 209 N. Y. 311; *People* v. *Marrin*, 205 N. Y. 275; *People* v. *Dolan*, 186 N. Y.

4; *People* v. *Shulman*, 80 N. Y. 373.) The court committed no error in excluding certain questions which were put for the purpose of showing hostility towards defendant on the part of the witnesses Gold, Mrs. Gold and Roch. (*Schultz* v. *T. A. R. R. Co.*, 89 N. Y. 242; *Gale* v. *N. Y. C. & H. R. R. R. Co.*, 76 N. Y. 594; *People* v. *Brooks*, 131 N. Y. 321; *Brink* v. *Stratton*, 176 N. Y. 150.) There was no error in receiving the testimony of De Malignon as to his opinion of the origin of the fire. (Wigmore on Ev. ch. 65, § 1917; *Dougherty* v. *Milliken*, 163 N. Y. 527; *Finn* v. *Cassidy*, 165 N. Y. 584.)

WERNER, J.:

The defendant was indicted jointly with one Isador Stein on the charge of arson in the second degree and was convicted. At the Appellate Division the judgment of conviction was unanimously affirmed, and the case is now before this court on defendant's appeal.

The specification of the first count of the indictment is that the defendant and Stein, in the daytime and on the 1st day of December, 1910, did willfully and feloniously set fire to and burn a certain dwelling house of one Sam Gold, in the borough of The Bronx, in the city of New York, in which dwelling there was at the time some human being. The other two counts are simply repetitions of the first, with the exception that each names a different person as the householder in whose dwelling the fire took place. The defendant now challenges the sufficiency of the indictment on two grounds: 1. That it refers to a dwelling house but does not state in precise terms or by description where the house was located. 2. That it states that there was some human being in the house at the time of the fire, but does not identify the person by name or otherwise. Both of these objections could have been raised by demurrer (Code Crim. Pro. sec. 323, subd. 2), but they were not available to the de-

fendant at the trial or on his motion in arrest of judgment (Code Crim. Pro. sec. 331), and for that reason they cannot be considered on this appeal.

The case was tried for the prosecution upon the theory that the defendant and Stein had entered into a conspiracy to induce various persons to insure their household effects for the purpose of having them damaged or destroyed by fires which were to be made by Stein; and that the defendant's part in the scheme was to take care of the adjustment of the losses and the collection of the insurance moneys for a stipulated percentage, out of which he was to pay Stein for the setting of the fires. As to the fire referred to in the indictment, the two principal witnesses were Gold, the owner of the property which had been insured and burned, and Stein, who laid and started the fire. Their testimony tended to show that Gold had procured insurance upon his household goods, pursuant to an understanding with the defendant that Stein should be employed to make a fire, and that then the defendant would attend to the adjustment of the loss and the collection of the insurance. With the details of this branch of the trial we need not concern ourselves, for the judgment entered upon the verdict has been unanimously affirmed, and that imports absolute verity of everything not challenged by objection and exception.

The prosecution adduced evidence, from Stein, of nine other incendiary fires in which the defendant is said to have been implicated with Stein, and of one fire in the defendant's own premises with which Stein had no connection. All of this testimony was received by the trial court over the objections and exceptions of defendant's counsel. These exceptions are the defendant's principal reliance on this appeal, although there are others to which we shall have occasion to refer. Before we give more specific attention to the testimony of other crimes adduced by the prosecution against the defendant, it will be useful to have

in mind the theory upon which its admission is sought to be justified on the one hand and condemned on the other.

It is one of the distinguishing features of our common-law system of jurisprudence that, as a general rule, a person who is on trial charged with a particular crime may not be shown to be guilty thereof by evidence showing that he has committed other crimes. The reason for this general rule has been stated by this court in a number of decisions, but never more tersely and clearly than by Judge PECKHAM in *People* v. *Shea* (147 N. Y. 78, 99, 10 N. Y. Crim. 1): "The impropriety of giving evidence showing that the accused had been guilty of other crimes merely for the purpose of thereby inferring his guilt of the crime for which he is on trial, may be said to have been assumed and consistently maintained by the English courts ever since the common law has itself been in existence. Two antagonistic methods for the judicial investigation of crime and the conduct of criminal trials have existed for many years. One of these methods favors this kind of evidence in order that the tribunal which is engaged in the trial of the accused may have the benefit of the light to be derived from a record of his whole past life, his tendencies, his nature, his associates, his practices, and, in fine, all the facts which go to make up the life of a human being. This is the method which is pursued in France, and it is claimed that entire justice is more apt to be done where such a course is pursued than where it is omitted. The common law of England, however, has adopted another and, so far as the party accused is concerned, a much more merciful doctrine. By that law the criminal is to be presumed innocent until his guilt is made to appear, beyond a reasonable doubt, to a jury of twelve men. In order to prove his guilt it is not permitted to show his former character or to prove his guilt of other crimes, merely for the purpose of raising a presumption that he who would commit them would be more apt to commit the crime in

question." The same subject is discussed at length in *People* v. *Molineux* (168 N. Y. 264, p. 292, 16 N. Y. Crim. 120), and more recently in *People* v. *Dolan* (186 N. Y. 4), in *People* v. *Katz* (209 N. Y. 311, 30 N. Y. Crim. 373) and in other cases. There are, however, certain recognized exceptions to this general rule which cannot be scientifically classified or enumerated, but which by common consent have long been grouped under five or six separate heads. Evidence of other crimes is of course always admissible when such evidence tends directly to establish the particular crime; and evidence of other crimes is usually competent to prove the specific crime when it tends to establish (1) motive, (2) intent, (3) the absence of mistake or accident, (4) a common scheme or plan embracing the commission of two or more crimes so related to each other that proof of one tends to establish the others, (5) the identity of the person charged with the commission of the crime on trial. (*People* v. *Molineux*, *supra*.) By eliminating, as inapplicable to the case at bar, the first, second, third and fifth of these judicial engraftments upon the general rule, we come at once to the one which the district attorney invokes. He argues with much force that the evidence of other crimes in which the defendant and Stein are said to have been jointly concerned tends to prove the existence of a common plan or scheme embracing the commission of two or more crimes so related to each other that proof of any one tends to establish the commission of the others. Even if we were to concede the applicability of this rule to the case at bar, we do not find any justification for the reception of the testimony showing that there had been a fire in the house occupied by the defendant. Stein testified that he had nothing to do with that fire, and there is no evidence that it was of incendiary origin, except as that inference may be drawn from the admission of the defendant to Stein to the effect that one Titelbaum was the incendiary. That admission would of course be com-

petent evidence against the defendant on a trial for the particular offense, but it was utterly irrelevant to the question whether the defendant and Stein had entered into a conspiracy which resulted in the fire charged in the indictment. According to the record there was not the remotest connection between the fire on the defendant's premises and the fire charged in the indictment or any other of the nine different fires in which Stein says the defendant was implicated. The fire in the defendant's house occurred before there was any conspiracy between the defendant and Stein, and it had no more relation to the other offenses than an assault or a theft committed by the defendant. The error in receiving this evidence was in itself so serious as to require a reversal of the judgment, but we cannot stop here, for the record discloses other equally prejudicial errors which must be avoided on another trial.

Stein testified to various conversations with the defendant which tended to establish the existence of a conspiracy between them for the making of fires in which Stein was to be the actual incendiary and the defendant was to assist in the adjustment of the losses and the collection of the insurance, while both were to receive stipulated shares of the proceeds. To the extent that this testimony was directed to the establishment of a general plan or scheme which resulted in the Gold fire charged in the indictment it was clearly competent, and it may be stated in passing that there was evidence of this nature which was ample to support the verdict convicting the defendant. This testimony was competent because it bore directly and cogently upon the defendant's guilt of the crime charged, through the criminal agency of Stein.

We have yet to consider, however, whether the evidence as to other specific fires tended to prove the felonious origin of the fire set forth in the indictment. In that connection we must not overlook the fact that each of the nine other fires was a separate

and independent transaction entered into as the occasion arose and not in pursuance of any preconcerted general plan or design. There was between them no such relation of time, place or circumstance that the bare evidence as to the origin of any one of these fires, in and of itself, tended to prove the origin of the Gold fire. The Ledermann fire, according to the testimony of Stein, occurred in the latter part of 1909. The time of the Greenberg, Goldberg and Sardoff fires is not fixed. The fires of Shapiro, Wasserman, Titelbaum and Dreier are said to have taken place respectively in April, June, July and November of 1910. Each was the subject of a separate and distinct conversation or understanding based upon the particular occasion as it arose. None had any relation to the Gold fire except that all are said to have sprung from the general agreement between the defendant and Stein. It is to be noted also that the evidence as to these other fires is quite unsatisfactory. Excepting Gold, not one of the persons whose property is said to have been damaged or destroyed by fire was called as a witness, and Stein's testimony was very uncertain as to the places where these several fires occurred. From the prejudicial nature of such evidence as was given by Stein of other separate fires in which the defendant is said to have been concerned, it is obvious that it should not have been received unless the perpetration of any or all of these acts tended, by visible connections, to prove the defendant's complicity in the crime charged in the indictment, and we think we have demonstrated that it had no such effect. Even in a case where evidence of this kind is so dubious that a court cannot clearly perceive its relevancy, the benefit of the doubt should be given to the defendant instead of permitting jurors to become prejudiced by independent facts which carry with them no proper proof of the particular crime charged. As we have already had occasion to observe, the subject is one which cannot be treated with dogmatic or scientific precision. In the

final analysis the application of the general rule and its recognized exceptions must depend upon the special facts. In concluding our discussion of this branch of the case we deem it proper to add that the antithesis of the case at bar is to be found in the case of *People* v. *Duffy* (212 N. Y. 57), in which a police officer in the city of New York was convicted of bribery. There it appeared that the accused had received from a certain individual a sum of money as a bribe. It was received under circumstances which rendered it proper, if not necessary, to give evidence of the defendant's guilty intent. It was shown, moreover, that the specific sum which the accused there received was but one of many contributions which had been regularly levied upon the proprietors of various resorts and establishments under a general plan or system. There proof of the system was cogent and competent evidence of the guilty character of the particular act. In the case at bar there was no such connection, and this is the determining difference between the two.

Since there must be a new trial we shall consider two other minor errors in order that they may not be repeated. Aside from Stein, the principal witnesses against the defendant were Gold, Mrs. Gold and one Roch. Defendant's counsel tried to show that these witnesses were ill-disposed toward the defendant, and on their several cross-examinations he had interrogated them as to certain hostile acts and expressions against the defendant which they either denied, or explained with some equivocations. When the defense had the case several witnesses were called by whom the defendant's counsel sought to prove the hostile expressions and acts against the defendant which the witnesses Gold, Mrs. Gold and Roch had, on their cross-examinations, either denied or explained. The trial court ruled that this evidence was inadmissible. It is probably fair to assume that this ruling was not predicated upon the idea that

evidence of this character is never admissible, but rather upon the ground that counsel's questions were inartificial or insufficient. Of this feature of the case it is enough to say that evidence of this character is generally competent, but whether it is brought within the rule governing the subject can only be decided in the light of the conditions under which the question arises. Defendant's counsel called a witness to contradict Gold as to certain hostile expressions which it is claimed the latter had made against the defendant. Before the counsel could complete his question the court ruled against him, and it is, therefore, not clear whether the evidence should have been received. It is plain, however, that the counsel should have been permitted to state his question to the witness.

The district attorney called as a witness one De Malignon, who was an assistant fire marshal in the city of New York. In his official capacity he had visited the Gold premises and investigated the fire. He was asked to give his opinion of the origin of the fire, and in answer he enumerated a number of facts which it was quite proper for him to state, and which he stated " indicated to my mind the fire was set." The question put to this witness was shorn of much of its harmful effect by the nature of his answer, which was quite unobjectionable with the exception of the conclusion which we have quoted. This is not a case for expert opinion. The physical facts, which are the subject of investigation, are so simple that they can be readily understood when properly described, and it is then for the jury to draw the appropriate conclusion.

The judgment of conviction should be reversed and a new trial ordered.

CARDOZO, J., (dissenting) :

I dissent from the judgment about to be pronounced in this case.

It is not charged that the defendant set the fire with his own hand. It is charged that Stein did the deed and that the defendant employed him to do it. The People, therefore, were called upon to prove the existence of a criminal agency. They could not do this persuasively or even intelligibly without proving the past relations between the defendant and the man who did his bidding. The crime charged in the indictment is the firing of Gold's house. The proof is that in November, 1910, the defendant told Stein there was a job for him. The job was to make this fire. It surely is not the law that the People could not go back of that day and hour to show the criminal agency in its genesis and in its development. Men do not commonly approach each other on the street and offer jobs of that kind without preface or warning. " Mr. Grutz said that he had a job for me. I asked him where the job was. And he said to me, you know the man." The very terms in which the order was given presuppose some antecedent understanding. Its laconic phrases are equivocal, if not incredible, unless. they are related back to some initial compact and some established course of dealing. The People were not required to leave the jury with the impression that suddenly, out of a clear sky, there came from the defendant the order to commit this crime. The jury had a right to know when and how and for what purposes these men had been associated in the past. Only through that knowledge could they judge of the verity of the charge that Stein in committing this crime was doing the defendant's bidding.

The People undertook, therefore, to exhibit the relation between the defendant and Stein in its origin and growth. The origin was in 1907, more than two years before the crime charged in this indictment. Stein, who was a painter, was employed to do some painting in the defendant's flat. A fire occurred there, and Stein was instructed by the defendant to say to the fire marshal that no one was in the house at the time.

That fire was started by another man, one Titelbaum. More than a year later, in 1909, the defendant met Stein again and suggested that they work together. He said that there was money to be made in fires, and that there was no risk of detection. He referred to the fire in his own house, and said that no trouble had come of it. Thus tempted, Stein yielded. He set fire to the apartment of one Ledermann, and, afterwards, to many others. " You can go ahead," said the defendant, " and make fires, and there is money to be made here, and do not have any fear, and this is the easiest way to make money." They had entered on arson as a business. No other interpretation is possible of the words just quoted when read in the light of subsequent events. The defendant was an insurance broker. It was his part to supply the insurance policies. Stein was the workman. His part was to set the fires that would make the policies a source of profit. It is not necessary to show that the two men associated themselves as partners, in express terms, the defendant to procure the insurance, and Stein to burn the buildings as the defendant gave the word. Conspiracies are not usually formulated in that way. But the cumulative force of all their words and acts leaves no escape from the conclusion that there was a comprehensive plan between them to work in concert at the trade of arson, the defendant in command, and Stein his constant agent. The order to burn Gold's house, was, therefore, not an isolated and spontaneous and sudden solicitation to crime. It was a step in the consummation of a conspiracy. It was the last act of a continuing agency, with the defendant the master and Stein the servant.

To say that the People could not prove these things, that they were cabined and confined within the bounds of this isolated transaction, is to shut out from the consideration of the jury a body of truth most plainly helpful in reaching a right judgment. Only some overmastering principle or precedent

should lead us to declare that our law of evidence withdraws from the jury these aids to a sound conclusion. I am persuaded that no such principle or precedent obstructs us here.

It is a mistake to say that in proving the course of dealing between the defendant and Stein, the People's effort was to demonstrate that because the defendant had committed other crimes, he was the kind of man that would be likely to commit this crime. (*People* v. *Shea*, 147 N. Y. 78, 10 N. Y. Crim. 1; *Makin* v. *Attorney-General*, L. R. [App. Cas. 1894] 57, 64.) That they had no right to do, and that they did not attempt to do. They proved the course of dealing in order to establish the origin and scope of the agency, in a word to establish a conspiracy, and they did not lose the right to prove this because the result was to prove that other crimes had been committed. (*Commonwealth* v. *Scott*, 123 Mass. 222, 234, 235; *Commonwealth* v. *Blood*, 141 Mass. 571, 575.) The relation of agency between two men is sometimes the result of an express mandate. It is as often the product of a course of dealing. It is many times a composite of both factors. In criminal as in civil trials neither factor may be excluded. If at the first meeting between the defendant and Stein they had agreed in so many words that Stein would set fires whenever the defendant ordered them, the propriety of admitting such evidence would not, I think, be doubted by any one. Their conversation was not so explicit; it had, therefore, to be interpreted in the light of the events that followed; and so interpreted its meaning was no longer doubtful. The scope of a conspiracy may be made out, not merely by what is said in its inception, but also by what is done in its development. (*Reg.* v. *Murphy*, 8 C. & P. 297.) When we view the totality of the acts, we perceive the nexus of the common scheme. The People were not restricted to proof of an employment the day before the fire. They were not restricted to proof of an employment in and through a single conversation.

They could prove earlier conversations and leave it for the jury to say whether these earlier conversations, construed in the light of what was done under them, made out a general conspiracy. It is no sufficient answer to say that the first fire in the defendant's house was started by some one else. That fire was referred to merely to explain the defendant's mention of it when employing Stein to set the fire at Ledermann's. In this there was no error, and certainly none that could have affected the result. When once it is conceded, however, that the initial conspiracy might be proved, it is impossible to uphold the conclusion that later instances of its renewal should have been omitted. If the People had the right to prove how the criminal agency began, they must have had the right to prove the perpetuation of that agency during the intervening years. If it was lawful to prove a criminal compact once, it did not become unlawful to prove that it was reaffirmed a dozen times. Indeed, it might well have been argued that a conspiracy formed in 1909 was too remote in the absence of evidence that it was kept alive as a continuing relation. To that single end the People's evidence was directed.

It would be useless to prolong the discussion by the analysis of the cases. The leading authorities are well known. The doubt is in their application. One case, however, I may refer to as supporting my own view. It goes farther perhaps than we are required to go here, for there the separate crimes were not so closely welded together by proof of an agreement unifying them in their origin. It is the case of *People* v. *McLaughlin* (2 App. Div. 419; 150 N. Y. 365). McLaughlin, a police captain, was charged with extortion. The charge was that he had collected the money through an agent, Burns. To confirm this, the People offered evidence that Burns had acted as the defendant's agent in many similar cases, and that there was a general scheme by which, through this division of labor, they were to

practice extortion in their precinct. At the Appellate Division it was held by a unanimous court that the evidence was proper. WILLIAMS, J., writing for the court said (p. 433):

" The evidence here was given, not for the purpose of raising a presumption that the defendant committed this crime because he had, before this, been guilty of other crimes of a like nature. The prosecution sought to prove such agency of Burns. They could not be expected to do this by direct evidence. They must prove it, if at all, by circumstantial evidence; and this might properly be done by giving any proof that tended to establish such criminal agency, notwithstanding the evidence given also tended to prove other distinct crimes to have been committed by the defendant through the agency of Burns. The only question is whether the evidence received of these prior transactions was competent and proper as circumstantial evidence tending to establish the fact sought to be proved. The rules of evidence are the same in criminal cases as in civil cases, except as otherwise provided in the Code of Criminal Procedure (§ 392). It is common in civil cases to establish agency by showing the relations of the parties in other transactions than the one in issue in the case on trial, by showing other transactions relating to the same business and extending over months and years when the parties held the relations of principal and agent, and we see no reason why the same rule of evidence may not be applied in this case. The suggestions made by the learned trial judge in his charge upon this subject, and explaining the purpose for which this evidence was received, seem to us to have been proper and correct. The evidence given tended to show that these men occupied the same official relations to each other during the years 1888, 1889, 1890 and 1891, prior to the alleged commission of this crime, and that they were engaged in this same general scheme of extortion, Burns acting under the advice, commands and procurement of the defendant, appar-

ently in pursuance of such general scheme, and that the defend-- ant, in conversations had with him, practically conceded such agency in such prior transactions. We have no doubt but that the evidence of the transactions themselves were competent in connection with the conversations so testified to, as tending to establish the agency of Burns for the defendant in the commission of the crime for which the defendant was being tried."

When the case of *People* v. *McLaughlin* reached this court, it was reversed on other grounds. The opinion of MARTIN, J., does, it is true, contain a discussion of this subject. " The charge of the learned trial judge," he says, " seems to indicate that he entertained the opinion that what he denominated ' criminal agency ' could be established in the same way, and by the same species of evidence, as may be employed in a civil action to establish the relation of principal and agent in favor of third persons. We think no such rule exists. We find no principle of criminal law which recognizes the relation of principal and agent in the sense in which the term is used in reference to business or commercial transactions. It is true that in civil actions upon contract, the course of dealing between parties may be proved to establish a general agency, but that principle has no place in criminal jurisprudence. From such evidence in civil actions a presumption is raised that the relation shown to exist in other transactions continues, or an estoppel is created which prevents the principal from denying the agency, and hence is presumptive or conclusive evidence of that fact. No such presumption or estoppel arises in a criminal case. There the presumption is of innocence, and the doctrine of estoppel has no application." (p. 391.)

A majority of the court did not concur in holding that proof of similar transactions was inadmissible in such conditions. ANDREWS, Ch. J., BARTLETT and VANN, JJ., expressed no opin-

ion on that point, and GRAY, J., dissented. We are thus left free to reach our own conclusion, unfettered by any adverse precedent.

There is no difference between civil and criminal trials in respect of the kind of evidence available to make out a criminal agency, which is merely another word for a criminal conspiracy. The agency that will subject the employer to criminal liability must, of course, be an actual agency, i. e., the agent's authority must be actual and not merely apparent. An agency by estoppel will not suffice. But an actual agency may be established by proof of what men have done as well as by proof of what they have said. (*Blake* v. *Albion Life Assur. Society,* L. R. [4 C. P. D.] 94, 109, 110; *U. S.* v. *Cole,* 5 McLean, 513, 601; *Martin* v. *Niagara Falls Paper Mfg. Co.,* 112 N. Y. 165, 175; *Hanover Bank* v. *Am. Dock & Trust Co.,* 149 N. Y. 621, 623; *Martin* v. *Webb,* 110 U. S. 7.) The same kind of evidence that will tend to sustain an inference of actual agency in civil trials will tend to sustain it in criminal trials. The same kind of evidence admissible to prove conspiracy in the one instance is admissible in the other. Truth is the same whether we seek it at the civil or at the criminal bar, and it is apprehended in subjection to the same laws of logic. The criminal law is not to be treated as a thing apart and by itself. The command of the statute is that " the rules of evidence in civil cases are applicable also in criminal cases, except as otherwise provided in this Code." (Code of Criminal Procedure, sec. 392.) The same rule prevails in England, and eminent judges have deplored the fact that it is sometimes overlooked. (*King* v. *Rodley,* L. R. [3 K. B. 1913] 468, 472.) It is not an adequate answer to say that in criminal prosecutions there is the presumption of innocence. That presumption does not destroy the efficacy of circumstantial proof. In the language of the court in *Dunlap* v. *U. S.* (165 U. S. 486, 502): " If it were

broadly true that the presumption of innocence overrides every other presumption, except those of sanity and knowledge of the law, it would be impossible to convict in any case upon circumstantial evidence, since the gist of such evidence is that certain facts may be inferred or presumed from proof of other facts." In criminal as in civil causes it is legitimate to argue back from individual acts to a scheme that underlies them. The true rule was tersely stated by Best, J., in *King* v. *Burdett* (4 B. & Ald. 95, 121, 122) : " It has been said that there is to be no presumption in criminal cases. Nothing is so dangerous as stating general abstract principles. We are not to presume without proof. We are not to imagine guilt, where there is no evidence to raise the presumption. But when one or more things are proved, from which our experience enables us to ascertain that another, not proved, must have happened, we presume that it did happen as well in criminal as in civil cases. *    *    * If the rules of evidence prescribe the best course to get at truth, they must be and are the same in all cases, and in all civilized countries. There is scarcely a criminal case, from the highest down to the lowest, in which courts of justice do not act upon this principle." Evidence of sufficient weight to make out an agency in civil trials may lack the weight essential to a conviction in criminal trials ; but evidence is not incompetent because, standing alone, it is inadequate. " It may be that a piece of evidence admissible in either class of cases, may not be sufficient in a criminal case, that is, without further evidence ; but the evidence is not the less admissible." (Grove, J., in *Reg.* v. *Mallory*, 15 Cox Cr. 460 ; quoted in Wigmore on Ev. 1, sec. 4.) Subject to the qualification that the conclusion is to be established with greater certainty in respect of crimes, the process of inference, regardless of the subject of the controversy, remains the same.

I think that the evidence of the past relations between Stein and the defendant was properly received.

Other rulings have been complained of, but if they involve technical error, they are not sufficiently substantial to affect the justice of the verdict. (Code Crim. Pro. sec. 542.)

The judgment of conviction should be affirmed.

WILLARD BARTLETT, Ch. J., HISCOCK and COLLIN, JJ., concur with WERNER, J.; CUDDEBACK and MILLER, JJ., concur with CARDOZO, J.

Judgment of conviction reversed, etc.