OPINION OF THE COURT
Marie G. Santagata, J.
Defendants, by separate motions, moved to dismiss this *515 indictment on the grounds that the District Attorney failed to give the Grand Jury adequate legal instructions (CPL 190.25 [6]) and tainted the proceedings by presenting evidence of criminal conduct not charged in this indictment (CPL 210.20 [1] [c]; 210.35 [5]). Other grounds for dismissal alleged by the defendants are not considered in view of this court’s decision and order herein.
Upon inspection of the Grand Jury minutes provided by the District Attorney, this court finds that release of all or part of the transcript to the parties is unnecessary to assist this court in deciding this motion (CPL 210.30 [3]).
After due deliberation, the defendants’ motions are granted to the extent and for the reasons to be set forth. The indictment is dismissed with leave to the District Attorney to represent to the same or another Grand Jury within 45 days of the issuance of this order (CPL 210.45 [9] [d]).
This court finds that this Grand Jury proceeding was defective within the meaning of CPL 210.35 (5) because: (1) highly prejudicial, inadmissible evidence of other crimes was presented to the Grand Jury (CPL 60.22, 190.65 [1]; 190.30 [6]); and (2) the legal instructions to the Grand Jury were so inadequate and misleading that the integrity of the Grand Jury proceeding has been impaired (CPL 190.25 [6]; 190.30 [7]).
Unique and unprecedented application and analyses of the law relating to (1) defective Grand Jury proceedings;' (2) accomplice corroboration, and the effect of the Molineux doctrine of common scheme or plan on the law of accomplice corroboration are presented herein.
BACKGROUND
The indictment charges counts of bribe giving, bribe receiving and conspiracy. It alleges in substance that Marvin Kaplan, Stanley Friedman, codefendants, and Robert Richards, an unindicted accomplice, in furthering the sale of a hand-held computer by Citisource, Inc. to the New York National Guard, agreed in 1984-1985 with codefendant Bernard Ehrlich that he would receive a bribe in return for the use of his influence as a public servant in the National Guard.
Portatech, a shell corporation, was organized by Richard Biaggi, Ehrlich’s law partner and an unindicted accomplice. It is alleged that Portatech received a $7,500 Citisource check intended as a bribe payment for Ehrlich.
*516 DEFECTIVE GRAND JURY PROCEEDING
This Grand Jury proceeding is defective because it fails to conform to the requirements of CPL article 190 to such degree that the integrity thereof is impaired and prejudice to the defendant may result (CPL 210.35 [5]).
To warrant dismissal, there must be a significant failure to conform to one or more of the requirements set forth in CPL article 190, which failure creates the possibility that prejudice may inure to the defendants (see, People v Di Falco, 44 NY2d 482, 487-488; People v Percy, 45 AD2d 284, 286, affd 38 NY2d 806).
Possible prejudice to the defendants was created by the District Attorney’s failing to properly apply the rules of evidence (CPL 190.30 [1], [6]) and to correctly instruct the Grand Jury with respect to the significance, legal effect and evaluation of evidence (CPL 190.30 [7]).
INADMISSIBLE TESTIMONY
A witness who was admittedly a corrupt public official testified to a prior uncharged act of bribery occurring between April 1982 and June 1983. He testified that codefendants Kaplan and Friedman offered him a bribe in connection with the sale of the hand-held computer to the New York City Parking Violations Bureau.
The District Attorney told the Grand Jury that this witness’ testimony could corroborate the testimony of the two unindicted accomplices, and that the prior incident and the present crime were part of a common scheme or plan. He bolstered the witness by reference to his previous appearances in court to give evidence, and instructed the jurors not to vote unless they had heard this witness’ testimony. The District Attorney made this witness crucial to the People’s case.
The testimony of this witness was inadmissible as a matter of law.
At trial, the question of admissibility of a prior uncharged crime is made by the court as a matter of law. It is not left to the jury to decide as a question of fact because of the potential for prejudice (People v Dellarocco, 86 AD2d 720, 721; see also, People v Molineux, 168 NY 264, 306; Fisch, Evidence § 26 [2d ed]; cf., People v Jennings, 69 NY2d 103, 114, 115).
During this Grand Jury presentation, the determination was made by the District Attorney as its legal advisor (CPL *517 190.25 [6]). The District Attorney introduced evidence of the prior uncharged crime as part of a common scheme or plan pursuant to the seminal case (People v Molineux, supra). This was error.
To be part of a common scheme or plan, there must be "strong similarities of time, place and circumstances”, and a substantial nexus between the crime presently charged and the one sought to be introduced. Some connection between the crimes must exist in the mind of the actor, uniting them for the accomplishment of a common purpose. (People v Dellarocco, supra, at 720-721.) A mere repetition of criminal conduct does not constitute a common scheme. There must be additional evidence which gives rise to a natural inference that the criminal acts are the individual manifestation of an overall plan or design (People v Fiore, 34 NY2d 81, 85). This connection must clearly appear from the evidence (People v Molineux, supra, at 306).
The prior act of bribery in this case was a separate and independent transaction. There was nothing in the prior crime that evinced any preconceived general plan or design that encompassed the present crime. There was no concurrence of time, place or circumstance that joined them as one (People v Grutz, 212 NY 72). This case is distinguishable from People v Duffy (212 NY 57) where there was a systematic scheme of collecting bribes evidenced by a written list of bribe givers and of collections made pursuant tó a system that joined the prior act of bribery with the crime charged. There is no such intertwining here, no "visible connection”, tending to prove the commission of this crime (People v Molineux, 168 NY, supra, at 309).
Had the evidence of the prior uncharged crime been part of a common scheme or plan, its admissibility would still be subject to balancing the probative value of the evidence against its potential for prejudice to the defendants (People v Ventimiglia, 52 NY2d 350, 359; People v Santarelli, 49 NY2d 241, 247; People v McKinney, 24 NY2d 180, 184; see also, Fisch, Evidence § 209 [2d ed]; Richardson, Evidence § 170 [Prince 10th ed]). During the course of this presentation, there was much unfavorable media attention concerning one of the codefendants and the Parking Violations Bureau. The climate was ripe for possible prejudice tp spill over to all the defendants.
Assuming, arguendo, that the prior uncharged crime and *518 the crime charged in this indictment were so intertwined that they came within the purview of a common scheme or plan and that the probative value of the witness’ testimony outweighed the prejudice, the testimony, although admissible, could not perform the function set forth by the District Attorney.
It could not corroborate the testimony of the accomplice in this crime because an accomplice may not corroborate another accomplice if the crimes are related (People v Jelke, 1 NY2d 321, 333). Implicit in the common scheme or plan theory is that the prior and the present crimes embrace each other thus becoming related and destroying the corroborating effect of the witness (People v Cona, 49 NY2d 26, 35; People v Cobos, 57 NY2d 798, 801-802).
The District Attorney also elicited testimony from this same witness that the defendant Kaplan was a "good” friend of a third party who was a known briber. There is no existing exception to the rules of evidence known to this court permitting such inflammatory testimony.
Additionally, this witness testified to bad acts of codefendant Friedman that were totally irrelevant to the uncharged crime or to this indictment.
He also testified to a brief conversation between himself and one of the two unindicted accomplices who testified in this proceeding. This unsubstantiated hearsay conversation concerning codefendants Friedman and Ehrlich’s supposed involvement in the present crime was inadmissible.
The testimony of this witness impaired the integrity of the Grand Jury resulting in substantial prejudice to the defendants. It showed a criminal propensity of the defendants and it introduced a concept of guilt by association, alien to the tenets of American jurisprudence. The composite effect of this witness’ testimony is devastating. The possibility of prejudice is obvious (see, e.g., People v Grafton, 115 AD2d 952; People v Dellarocco, 86 AD2d 720, 721, supra).
INADEQUATE LEGAL INSTRUCTIONS
The District Attorney failed to give adequate legal instructions.
A Grand Jury need not be charged with the same degree of precision as is required for a petit jury (People v Valles, 62 NY2d 36, 38). The District Attorney’s instructions must however be sufficiently thorough and accurate to give the grand *519 jurors guidance adequate for them to carry out their function, to wit: to investigate crimes and determine whether sufficient evidence exists to accuse a citizen of a crime and subject the person to criminal prosecution (People v Valles, supra, at 38).
Ordinarily, it is sufficient in a Grand Jury presentation for the District Attorney to read the applicable statutes (People v Calbud, Inc., 49 NY2d 389, 395; People v Lawson, 84 Misc 2d 24, 28; People v Dingle, 70 Misc 2d 840, 844). However, when he undertakes to advise, inform or explain the law, he must do so correctly and intelligibly. To do otherwise jeopardizes the proceeding.
In this case, the District Attorney did read the applicable statutes to the Grand Jury. However, he elaborated by giving erroneous, misleading and sometimes incomprehensible explanations of the law buttressed by unfathomable examples. Thus, the legal instructions were so misleading and incomplete that the integrity of the Grand Jury has been impaired and possible prejudice to the defendants has resulted (CPL 210.35 [5]; People v Calbud, Inc., supra).
The totality of these errors renders the charge violative of CPL 210.35 (5). The specific instances which contributed most to that sum total are as follows:
(1) After reading the statutory definition of legal sufficiency the District Attorney erroneously explained it by telling the grand jurors "If you believe it then it is legally sufficient.” (Cf., CPL 70.10.) A subsequent iteration, during the voting instruction, was given in the form of an unfortunate example about a man with 17 perjury convictions who was raped by a pigmy who "landed from” a space ship. It was neither clear nor appropriate. The potential effect of the instructions was to render the Grand Jury’s understanding of its burden either erroneous or unclear (see, People v Sanchez, 125 Misc 2d 394).
(2) Portions of the instruction on the proof of conspiracy and one’s connection to it was incomprehensible. The instruction as to the unlawful agreement, and what constitutes overt acts in furtherance of the conspiracy was both inaccurate and unintelligible (see, Matter of Report of Special Grand Jury of County of Monroe Empanelled Feb. 14, 1978, 77 AD2d 199, 202).
(3) The circumstantial evidence instruction was introduced by verbiage that could be construed as limiting it to defendant Ehrlich. This was misleading. Portions of this instruction were unintelligible and inconsistent. At one point, the District *520 Attorney erroneously told the jurors that they must draw the inference from the circumstantial evidence instead of advising them that they may draw it.
(4) The District Attorney read the statutory definition of intent. However, while giving instructions on conspiracy he told the Grand Jury, "A person is presumed to intend the reasonable, probable consequences of his actions.” This is error. The proper instruction should emphasize its true nature as a permissive inference without hint that it may be a presumption of law (see, People v Getch, 50 NY2d 456, 463-464; People v Sullivan, 68 NY2d 495, 502; Sandstrom v Montana, 442 US 510, 515).
(5) The District Attorney identified two witnesses as accomplices as a matter of law but when he explained the law, on at least two occasions, he failed to mention one of the accomplices even though the instruction applied to both of them.
(6) The instructions regarding corroboration relating to the testimony this court finds inadmissible in the first instance, were either absent, in error, or inapplicable. The District Attorney failed to instruct the Grand Jury that for the witness to provide corroboration, it must find: (a) that the witness and the accomplice were each accomplices of the defendant in wholly unrelated crimes, and (b) that the witness and the accomplice are not accomplices of each other either in the present crime or in the unrelated crime. Otherwise, the witness himself requires corroboration (People v Potwora, 51 AD2d 678; People v Chamberlain, 38 AD2d 306). In this case the witness and Richards were accomplices in the prior uncharged crime. Therefore, the witness could not provide corroboration without his testimony being corroborated. This was not communicated to the jurors.
In his instructions the District Attorney blended two principles of law into one confusing misstated theory. His attempt to keep the prior uncharged crime "related” for the purposes of admissibility as part of a common scheme or plan and "wholly unrelated” for the purposes of corroboration resulted in combining two doctrines, confusing both and laying a foundation for neither. The example given by the District Attorney of "The classic case” involving a cop on the beat was a classic example of why examples should not be given and are frowned upon by the courts (People v Cullum, 123 AD2d 397).
An accurate, consistent, and comprehensible charge on ac *521 complice corroboration was essential in this case, in view of the nature of the testimony (cf., People v Sanchez, 125 Misc 2d 394, 395-396, supra, and the cases cited therein; People v Loizides, 123 Misc 2d 334, 338-341).
(7) The District Attorney did not give any final instructions on the proper use of the hearsay statements of the coconspirators. It was necessary in this case since much of the testimony offered against these defendants consisted of hearsay statements of unindicted coconspirator/accomplices. Without instruction the possibility that the Grand Jury made either unwarranted or improper use of these statements is compelling.
(8) During voting instruction, the jurors were told not to vote if they missed the testimony of the corroborating witness thus pinpointing and magnifying the inadmissible evidence. They were also told "if you find from other testimony, that there was evidence from non-accomplices sufficient to connect the defendants with the commission of the offense, then you may vote.” In effect, this excluded from deliberation and voting those who might vote against indicting the defendant because they did not find corroboration.
The Grand Jury is an arm of the court. The court is its watchdog. It is the court alone that reviews the Grand Jury minutes on a motion which defendant has made absent knowledge of the proceeding itself. This places a heavy burden on the conscience of the court to act without fear or favor to preserve the integrity of the Grand Jury. This proceeding as a whole is fraught with such a multiplicity of defects that dismissal of the indictment is required.
Accordingly, this indictment is dismissed with leave to the District Attorney to re-present to the same or another Grand Jury within 45 days of the issuance of this order.