■ THE PEOPLE OF THE STATE OF NEW YORK, Respondent, v GENE HODGE, Appellant.—Appeal by the defendant from a judgment of the Supreme Court, Kings County (Kramer, J.),

rendered May 14, 1986, convicting him of criminal possession of a controlled substance in the third degree, upon a jury verdict, and imposing sentence.

Ordered that the judgment is affirmed.

The defendant was the managing agent of two adjoining apartment buildings at 2160 and 2164 Caton Avenue in Brooklyn which were owned by his wife. In or about April 1984 the police began receiving complaints that drug sales were being conducted in the basements of these buildings. After a preliminary investigation, a series of search warrants was executed during the month of May as a result of which cocaine and money were recovered. In June, one of the officers in charge of the investigation, Raul Valles, received two phone calls from an unknown male offering him substantial amounts of cash if the police would stop harassing the drug operation. He was subsequently contacted by a female, code-named Sweetie Pie, who called him to arrange the amount of the bribes and the locations at which he could receive them. These conversations were taped. Over the next two months the police received bribes from members of the drug operation while they continued their investigation trying to learn who was actually running the organization. On September 12, 1984, the police conducted raids of locations used by the operation, including several apartments and the basements at 2160 and 2164 Caton Avenue. As a result of the seizure of cocaine and other drug paraphernalia at these locations, charges were leveled against the defendant and several other people.

At trial former employees of the drug operation testified, for the People, that the defendant was actively involved in running the organization and was one of its principals. Diane Dargan, also known as Sweetie Pie, testified that the defendant was the person who initiated the scheme to bribe the police.

The defendant contends that the indictment against him should have been dismissed because he did not effectively waive immunity when he testified before the Grand Jury (see, CPL 190.40 [2]; 190.45). We note that the defendant never made a motion to dismiss the indictment either before or at trial and therefore has not preserved this issue for appellate review. In any event, the minutes of the Grand Jury proceedings reveal that the defendant swore that it was his signature which appeared on the written waiver introduced at the proceedings. The defendant asserts that his acts before the Grand Jury did not satisfy the requirements of CPL 190.45 (2)

that a "waiver of immunity is not effective * * * until it is sworn to before the grand jury". However, it is clear that in swearing before the Grand Jury that the signature on the written waiver was in fact his own, the defendant satisfied the "unequivocal direction" of the statute by swearing that he had "in fact executed the waiver or that he waived immunity" *(People v Higley,* 70 NY2d 624, 626, 625).

The defendant argues that the People failed to prove every element of the crime of which he was convicted and further that his guilt was not established beyond a reasonable doubt. Although charged with several crimes in a multicount indictment the defendant was convicted of only criminal possession of a controlled substance in the third degree (Penal Law § 220.16 [1]) resulting from cocaine found in the basement of 2160 Caton Ave. Although the defendant was never in actual possession of the drugs and there was no direct evidence of his intent to sell them, the testimony at trial established that the defendant was a major force in the drug operation and that he exercised dominion and control over the drugs (Penal Law § 10.00 [8]). He therefore had constructive possession of the cocaine and his intent to sell it could be inferred from his involvement in the operation. Viewing the evidence in the light most favorable to the prosecution *(see, People v Contes,* 60 NY2d 620), we find that it was legally sufficient to establish the defendant's guilt. Moreover, upon the exercise of our factual review power, we are satisfied that the verdict was not against the weight of the evidence (CPL 470.15 [5]).

The defendant claims that he was deprived of a fair trial since the court allowed the prosecution to use evidence of uncharged crimes in order to establish the crime for which he was convicted. While it is true that the People established the defendant's possession of the drugs by proof of his other illegal activities, this evidence was admissible since it proved that there existed "a common scheme or plan embracing the commission of two or more crimes so related to each other that proof of one tends to establish the others" *(People v Ventimiglia,* 52 NY2d 350, 359). The introduction of this evidence was material and necessary to the People's case and its probative value outweighed its prejudicial effect since it " 'logically and by reasonable inference' " tended to prove the crime charged *(People v Ventimiglia, supra,* at 360). Similarly the taped conversations of the defendant's accomplices were admissible as exceptions to the hearsay rule as statements of coconspirators *(see, People v Salko,* 47 NY2d 230). Although the defendant was not charged with conspiracy, the evidence

was admissible since it tended to prove the defendant's "commission of a substantive crime for which the conspiracy was formed" *(People v Salko, supra,* at 237). In the case at bar a conspiracy was formed to bribe police in order to allow the defendant to continue to operate a major drug sales operation.

While not directly challenged on appeal this court recognizes that the defendant's conviction was obtained essentially through the use of accomplice testimony. We are satisfied, however, that there was sufficient independent corroborating evidence tending to connect the defendant with the crime *(see,* CPL 60.22 [1]; *People v Hudson,* 51 NY2d 233, 238). This evidence consisted of statements made by the defendant to the police and the observations of the police themselves. Although "[i]t may * * * be said that each of the particulars of th[e] independent proof, taken separately and without reference to the accomplice testimony, is innocent and nonindicative", taken cumulatively they could support a reasonable inference that the defendant was a principal of the drug operation and therefore constructively possessed the cocaine in question *(People v Hudson, supra,* at 240).

The defendant had previously been convicted of bribery. The court ruled that if he took the stand the prosecutor would be allowed to ask him the nature of his conviction but could not explore the underlying facts. The defendant contends that this ruling prevented him from testifying in his own behalf. However, the court's ruling was proper since bribery is an act of "individual dishonesty and untrustworthiness" proof of which should be admitted at trial "because the very issue on which the offer is made is that of the veracity of the defendant as a witness" *(People v Sandoval,* 34 NY2d 371, 378).

Although the use of a hypothetical during the court's supplemental charge to the jury should have been avoided, there is no evidence that the hypothetical as given was either coercive or diversionary *(see, People v Cullum,* 123 AD2d 397). Nor is the defendant's sentence excessive in view of the fact that it is substantially less than the maximum he could have received. Mangano, J. P., Brown, Kooper and Balletta, JJ., concur.