■ THE PEOPLE OF THE STATE OF NEW YORK, Respondent, v CONRADO PONS, Appellant.—Appeal by the defendant from a judgment of the Supreme Court, Kings County (Egitto, J.), rendered January 7, 1987, convicting him of murder in the second degree (four counts), arson in the second degree, and reckless endangerment in the first degree (two counts), upon a jury verdict, and sentencing him to concurrent indeterminate terms of 25 years' to life imprisonment upon his convictions of murder in the second degree (counts one and two), 8⅓ to 25 years' imprisonment upon the conviction of arson in the second degree (count five), concurrent indeterminate terms of 2⅓ to 7 years' imprisonment upon the convictions of reckless endangerment in the first degree (counts six and seven), and concurrent indeterminate terms of 25 years' to life imprison-

ment upon the convictions of murder in the second degree (counts three and four) to be served consecutively to the sentences imposed under counts one and two.

Ordered that the judgment is modified, on the law, by deleting the provision thereof stating that the terms of imprisonment imposed on the conviction of murder in the second degree (counts three and four) must be served consecutively to the sentences imposed under counts one and two, and substituting therefor a provision stating that those terms of imprisonment shall run concurrently with each other; as so modified, the judgment is affirmed.

According to the evidence adduced at the trial, on March 24, 1984, the defendant, who was "in charge" of "the Corporation", a Cuban gambling enterprise which operated over 500 numbers parlors throughout New York City, hired William Diaz, his faithful soldier, to burn down a competitor's numbers spot located at 291 Evergreen Avenue in Brooklyn for $2,000. The defendant had visited 291 Evergreen Avenue, which was two blocks away from one of the Corporation's numbers parlors, on two occasions earlier in the year and told an employee, Anthony Cerone, that the operation would have to be closed. On March 24, 1984, when the defendant returned to 291 Evergreen Avenue on the third occasion with Diaz, and found it still operating, he directed Diaz to commit arson at that location. The following day, Diaz and Calvin Coleman, who was jointly indicted with the defendant and separately tried, went to 291 Evergreen Avenue. While Diaz waited outside, Coleman entered the premises with a bucket of gasoline, threw the gasoline against a wall, and ignited it with a match. Soon after, the building was engulfed in flames. Two men, Jose Luis Castro and Carlos Rivera, were unable to escape from the burning building, and both died.

The nefarious operations of the Corporation had been the subject of scrutiny by law enforcement officials for some time. In the course of the investigation, Diaz, as well as Danny Net, whose participation Diaz had enlisted in an attempt to burn down a competitor's numbers spot elsewhere in Brooklyn at the defendant's request, became Government informants. Ultimately, the defendant was arrested for his role in the Evergreen Avenue fire.

At the trial, Diaz described the elaborate hierarchal structure of the Corporation, as well as its extensive operations. He explained that, in furtherance of its goal of operating numbers parlors unimpeded by competition, the Corporation had a

policy prohibiting rivals from maintaining parlors within a two-block radius of its own parlors. In this connection, Diaz was permitted to testify, pursuant to a pretrial ruling, as to completed and anticipated torchings and demolition jobs ordered by the defendant of competitors' numbers spots operating in violation of its two-block rule. Also admitted at trial were tape recordings of various conversations between and among the defendant and his accomplices, which included references to uncharged crimes.

The defendant claims that he was deprived of a fair trial by the court's ruling permitting the prosecution to adduce evidence of uncharged crimes in order to establish the crimes of which he was convicted. We disagree. It is settled that evidence of uncharged crimes is not admissible as part of the People's direct case if its sole purpose is to show that the accused was predisposed to commit the crimes charged *(People v Santarelli,* 49 NY2d 241, 247). Such evidence will, however, be admissible "if it helps to establish some element of the crime under consideration" or if it falls within a recognized exception to the rule *(People v Alvino,* 71 NY2d 233, 241). In this case, such evidence was admissible to establish "a common scheme or plan embracing the commission of two or more crimes so related to each other that proof of one tends to establish the others" *(People v Molineux,* 168 NY 264, 293). Specifically, the Corporation and one of its prime players, the defendant, were committed to the successful operation of the gambling enterprise, which entailed the elimination of nearby competition, and Diaz's testimony and references on tape-recorded conversations to the various other fires and demolition jobs were relevant to demonstrate that the Evergreen Avenue fire was part of this plan and was executed pursuant to the defendant's instructions *(see, People v Hodge,* 141 AD2d 843).

*People v Grutz* (212 NY 72), on which the defendant relies for his claim that the common scheme or plan exception was improperly invoked at bar, is inapposite. Unlike in *People v Grutz (supra)* where the evidence was not properly admitted because it was not apparent that there existed a single, preconceived plan encompassing both the charged and uncharged crimes, the uncharged crimes in this case were contemplated within the Corporation's grand scheme of operating a gambling enterprise without nearby competition by eradicating all competitive enterprises violative of its two-block rule. Moreover, the charged and uncharged crimes were characterized by a relationship of place and circumstances found lacking in *People v Grutz (supra),* which would tend to prove the

defendant's participation in the Evergreen Avenue fire. Thus, *People v Grutz (supra)* is distinguishable, since it may be said in this case that "the collateral acts are sufficiently connected with the act in issue such that each forms a part of a common plan on the part of the actor *to achieve some ultimate result*" *(Matter of Brandon,* 55 NY2d 206, 212; emphasis added).

The evidence of uncharged crimes was also competent to establish that Diaz and the defendant were acting in concert, a claim challenged by the defense, which maintained that Diaz committed the Evergreen Avenue arson on his own initiative, independent of the defendant. Where the complicity of a defendant in the crime charged is at issue, evidence of the defendant's complicity in other crimes has been held admissible so long as the same other individual is involved in the uncharged crimes and they are similar to the crime charged *(see, People v Jackson,* 39 NY2d 64, 68; *People v Parsons,* 150 AD2d 614; *People v Wang,* 140 AD2d 567, 570). The People were properly permitted to rebut the defense claim with evidence of other instances in which Diaz agreed to torch or destroy numbers parlors upon the defendant's request, since such evidence rendered it more probable that the Evergreen Avenue fire was a crime in which the defendant and Diaz had acted in concert.

This evidence was also admissible to establish "a motive common to all of the crimes sought to be proved" *(People v Molineux,* 168 NY 264, 297, *supra).* The defendant's perpetration of the other crimes, the motive for which was the elimination of nearby competition, rendered it more likely that the defendant was actuated by that motive in the Evergreen Avenue fire as well.

Similarly, the tape-recorded conversations of the defendant's accomplices, which included references to uncharged crimes, were properly admitted under the exception to the hearsay rule as statements of coconspirators made in the course of and in furtherance of the conspiracy to operate a gambling enterprise unimpeded by competition *(see, People v Salko,* 47 NY2d 230; *People v Hodge,* 141 AD2d 843, 845-846, *supra).*

While the evidence of uncharged crimes admitted at trial was extensive, we conclude that the trial court properly exercised its discretion in balancing the probative value and the need for the evidence, which was "material and necessary to the People's case" *(People v Hodge,* 141 AD2d 843, 845, *supra),* against the potential for prejudice *(see, People v Alvino,* 71 NY2d 233, 242, *supra; People v Ventimiglia,* 52 NY2d

350, 360; *People v Allweiss,* 48 NY2d 40, 48-49; *People v Hodge,* 141 AD2d 843, 845, *supra).*

Finally, as the People concede, the court erred in imposing consecutive terms of imprisonment for counts of murder in the second degree of which the defendant was convicted. Since the deaths of the two victims resulted from the defendant's single act of arson, any terms of imprisonment imposed must run concurrently *(see,* Penal Law § 70.25 [2]; *People v Coleman,* 153 AD2d 756).

We have considered the defendant's remaining contentions and find them to be without merit. Mollen, P. J., Brown, Eiber and Rosenblatt, JJ., concur.