FREDERICH BEUERLIEN, JR., Respondent, *v.* CORNELIUS O'LEARY, Appellant.

1. SALE IN FRAUD OF CREDITORS — VENDOR AS WITNESS — ADMISSIONS. When, in an action involving the validity of a sale of chattels as against creditors, the vendor testifies as a witness for the vendee in support of the good faith of the sale, the party attacking the sale is entitled, on cross-examination, for the purpose of impeaching the credibility of the witness, to question him as to his having made statements out of court, in the absence of the vendee, to the effect that the sale was colorable only.

2. SALE IN FRAUD OF CREDITORS — INTENT OF VENDOR. While the fraudulent intent of the vendor does not determine the validity of the title of the vendee, it is a material and relevant fact in attacking a sale of chattels as being in fraud of creditors, and one which the attacking party is entitled to have considered.

3. FRAUDULENT INTENT — EVIDENCE OF OTHER FRAUDULENT TRANSACTIONS. In the investigation of an alleged fraudulent sale, the party attacking the sale is entitled to show other fraudulent transactions by the vendor, when they are so related in character and in point of time to the transaction under investigation as to be relevant as bearing upon the vendor's intent in that transaction.

*Beuerlien* v. *O'Leary*, 77 Hun, 607, reversed.

(Argued March 9, 1896; decided April 7, 1896.)

APPEAL from judgment of the General Term of the Supreme Court in the fifth judicial department, entered upon an order made March 27, 1894, which affirmed a judgment in favor of plaintiff entered upon the report of a referee.

The defendant in this action is a deputy sheriff of the county of Livingston, and was sued for seizing upon an attachment and subsequently selling upon an execution a part of a stock of merchandise in possession of the plaintiff. The attachment and execution were issued against the property of Barney Beuerlien, a brother of the plaintiff, who had owned the stock of merchandise in question, or the principal part of it, and who had incurred the debt to the attaching creditors in its purchase and who had subsequently conveyed it to plaintiff.

Further facts are stated in the opinion.

*John E. Smith* for appellant. The referee erred in not permitting an answer to the questions asked upon the cross-examination cf Barney Beuerlien affecting his credibility and calling for a statement made by him at a designated place and time. (*Carter* v. *Bowe*, 41 Hun, 516; 41 Hun, 203; *Wright* v. *Nostrand*, 94 N. Y. 31; *Hill* v. *Hoole*, 1 N. Y. S. R. 556; *Pfeffelé* v. *S. A. R. R. Co.*, 10 Wkly. Dig. 44; *Starks* v. *People*, 5 Den. 108; 1 Greenl. on Evid. §§ 461, 462; *Newton* v. *Harris*, 6 N. Y. 345; *People* v. *Gay*, 3 Seld. 378; *Vorona* v. *Socarras*, 8 Abb. Pr. 302; *In re Snelling*, 136 N. Y. 515; *Bush* v. *Roberts*, 111 N. Y. 278.) The errors complained of cannot be regarded as harmless to the defendant, as the questions called for answers tending directly to contradict the evidence the witness had given upon his direct examination and for answers bearing directly upon the issue of fact upon which the referee's report and the judgment rest. (*In re Chase*, 41 Hun, 203; *Cuyler* v. *McCartney*, 40 N. Y. 221; *Leonard* v. *Dermit*, 20 Wkly. Dig. 558; *Bush* v. *Roberts*, 111 N. Y. 278; *Flannery* v. *Van Tassel*, 131 N. Y. 639; *Starks* v. *People*, 5 Den. 108; *Newton* v. *Harris*, 6 N. Y. 345; *In re Snelling*, 136 N. Y. 515; *F. Nat. Bank* v. *Warner*, 55 Hun, 120.) The referee erred in sustaining the plaintiff's objections and excluding answers to questions asked of the defendant's witness, Clarence V. Kellogg, and in sustaining the objection and excluding an answer to the questions. An affirmative answer to each of these

questions, or to either of them, would have shown that Barney Beuerlien made the transfer in question with the intent of cheating and defrauding his creditors. (*Bush* v. *Roberts*, 111 N. Y. 278; *Loos* v. *Wilkinson*, 110 N. Y. 195; *Flannery* v. *Van Tassel*, 131 N. Y. 639; *Adams* v. *Davidson*, 10 N. Y. 309; *Newlin* v. *Lyon*, 49 N. Y. 661; *Cuyler* v. *McCartney*, 40 N. Y. 221.) The referee erred in sustaining the plaintiff's objections and not permitting the defendant to prove that at the time when Barney Beuerlien ordered the goods in question, he made false representations as to his financial condition to obtain credit for the goods and what those representations were. (*Rothschild* v. *Solomon*, 20 N. Y. S. R. 59; *F. Nat. Bank* v. *Warner*, 55 Hun, 120; *Talcott* v. *Rosenthal*, 22 Hun, 573; *Tim* v. *Smith*, 13 Abb. [N. C.] 31; *Bush* v. *Roberts*, 111 N. Y. 278; *Starin* v. *Kelly*, 88 N. Y. 418; *Parker* v. *Conner*, 93 N. Y. 118; *Loos* v. *Wilkinson*, 110 N. Y. 195.) The referee erred in not permitting the defendant to prove that the conveyance of the house and lot by deed dated the 23d day of January, 1889, executed by Barney Beuerlien, to his wife, Celia Beuerlien, was a fraudulent one, without consideration, and in sustaining the objection to the following question asked upon the cross-examination of Barney Beuerlien: "Did your wife pay you any money at the time this deed was given?" (*Loos* v. *Wilkinson*, 110 N. Y. 195; *Spaulding* v. *Keyes*, 125 N. Y. 113; *Cary* v. *Hotailing*, 1 Hill, 311; *Allison* v. *Matthieu*, 3 Johns. 234; *Murfey* v. *Brace*, 23 Barb. 561; *Livermore* v. *Northrup*, 44 N. Y. 107.)

*John F. Conner* for respondent. The questions to Kellogg and Shafer were asked for the purpose of proving declarations of Barney Beuerlien to the effect that the transfer of the goods from himself to plaintiff was fraudulent, and the objections to them were properly sustained. (*Bush* v. *Roberts*, 111 N. Y. 278.)

ANDREWS, Ch. J. We think the referee erred in rulings excluding evidence offered by the defendant.

(1) The defense to the action was that the transfer of the stock of goods and accounts by the judgment debtor, Barney Beuerlien, to his brother, the plaintiff, on or about the 17th day of December, 1888, was fraudulent as to Barney's cred-. itors. The plaintiff claimed that he purchased the stock and the accounts in good faitn and paid their full value; and the referee so found and also that such purchase was made by the plaintiff without any intent . on his part to defraud the creditors of Barney. The insolvency of Barney at the time of the alleged sale to the plaintiff was clearly established. The transfer in question was followed a few days later by a conveyance by Barney to the plaintiff of nineteen acres of land and a conveyance by Barney to his wife of a house and lot. These several transfers embraced substantially all of Barney's property. The defendant, on the trial, sought to establish that the sale to the plaintiff of the stock and accounts was colorable merely, and made for the purpose of putting the property beyond the reach of Barney's creditors. It is conceded that the sum of twelve thousand dollars, the consideration expressed in the bill of sale to the plaintiff, was the fair value of the goods and accounts. The question whether the plaintiff paid the consideration was sharply litigated on the trial. Witnesses for the defendant testified to admissions made by Barney and the plaintiff when they were together in the store in April, 1889, to the effect that the plaintiff had only put $2,500 into the business, and that he held the stock for Barney. This was after the time when, according to the testimony of both Barney and plaintiff, the latter had paid to or for Barney nearly the whole sum of $12,000, the purchase price of the goods and accounts. Both the plaintiff and Barney, as witnesses, denied the making of the admissions referred to. They were examined fully as to the circumstances attending the sale, and checks and other memoranda were produced tending to show that the plaintiff had paid to Barney, or to creditors of Barney at his request, after the sale and prior to April, 1889, the larger part of the consideration for the sale. This evidence was supplemented

by testimony of both brothers of other payments (not sup-ported by memoranda) made by the plaintiff to Barney of cash at various times to apply on the purchase money, and they also testified that by agreement there was allowed thereon a debt of $1,000 for money borrowed by Barney of the plaintiff in the year 1888, prior to the sale. There is evidence to support the finding of the referee that the plaintiff paid the full consideration stated in the bill of sale, and that the transaction on his part was not colorable merely, but was *bona fide.* But Barney was called by the plaintiff to support the validity of the sale. He testified in the plaintiff's behalf as to the whole transaction ; the circumstances under which the sale was made ; the payment by the plaintiff of the whole purchase money, and his testimony was a direct refutation of the claim made by the defendant that the plaintiff had only put into the purchase the sum of $2,500. It was competent for the defendant to show that Barney had made statements inconsistent with his evidence on the trial, to impair his credibility as a witness. (Green. Ev. §§ 461, 462.) The defendant's counsel on cross-examination of Barney, inquired of him whether he had made statements out of court (in the absence of the plaintiff) to Shafer and Kellogg, witnesses for the defendant, at a time and place mentioned, to the effect that the transfer to the plaintiff was colorable merely ; that there was in fact no actual or *bona fide* sale of the goods and business of the plaintiff, and that all the interest he had in the goods was $2,500, and including his liability to the bank, $4,000. The questions were objected to by the plaintiff's counsel. The defendant's counsel stated that the proof was offered to affect the credibility of the witness, and the referee excluded the evidence. This was clearly error. It is quite probable in view of the fact that the witness had contradicted the testimony of Shafer and Kellogg, that similar statements had been made by him in presence of his brother, that he would have denied that he had made them when his brother was not present. But this cannot be assumed as a legal conclusion, and we cannot say with certainty that the exclusion

of the evidence was harmless. If the witness had admitted that he made the admissions sought to be proved, it might have affected the conclusion of the referee as to the *bona fides* of the plaintiff, which was found on the whole evidence, including the evidence of Barney.

(2) The fraudulent intent of Barney in making the sale was a material fact. The plaintiff's title might be good although Barney's intent was fraudulent. But it is one of the steps in assailing a sale of chattels as being in fraud of creditors, to show the fraudulent intent of the vendor. This being shown, the vendee may show that, nevertheless, he was a purchaser in good faith and for value, without notice of the fraud. The defendant on the trial offered to prove (1) that in the summer of 1888, a few months before the sale to the plaintiff, Barney, the vendor, procured credit for goods to the amount of about $3,500, which were delivered in the fall, and which for the most part were included in the sale to the plaintiff, the debt for which was the consideration of the judgment under which the defendant levied upon the stock, upon false and fraudulent representations as to his solvency; and (2) that in January, 1889, the judgment debtor conveyed to his wife his only remaining property, namely, his house and lot, and that the conveyance was fraudulent and without consideration.

The proof of the fraudulent representation and of the fraudulent conveyance was offered, as bearing upon the fraudulent intent of Barney in making the sale to the plaintiff in December, 1888. We think the evidence was competent, and that it was erroneously excluded. The fraudulent transactions of Barney offered to be proved were so related in character and in point of time to the transaction under investigation that they were relevant as bearing upon his intent in the transaction in question. In investigations of alleged fraudulent conveyances much more latitude is allowed than in other cases. The intent is seldom disclosed on the face of the transaction. It is generally concealed under legal forms. It can seldom be proved by direct evidence. It must

in most cases be established by inference from a variety of facts. It is upon these and like considerations that courts have held that "the case of fraud is among the few exceptions to the general rule, that other offenses of the accused are not relevant to establish the main charge." (*Cary* v. *Hotailing*, 1 Hill, 311.) The referee made no finding as to the intent of Barney in making the sale to the plaintiff. He found that the plaintiff was a purchaser in good faith for value. But as bearing upon this question, the defendant was entitled to have all the circumstances considered, including the intent of Barney in making the sale. His intent, though fraudulent, would not determine the case against the plaintiff, but it was a fact relevant to the litigation.

We think the errors mentioned require a reversal of the judgment.

The judgment should be reversed and new trial ordered.

All concur, except Haight, J., not sitting.

Judgment reversed.