BENEDICT v. ELDRIDGE et al.

(Supreme Court, Appellate Division, Fourth Department. February 9, 1897.)

1. APPEAL—EXCLUSION OF EVIDENCE—HARMLESS ERROR.

A judgment that a conveyance is in fraud of creditors will not be reversed because of the exclusion of evidence of a conversation which tended to show the grantee's good faith, where the substance of the conversation was shown in other connections. Ward, J., dissenting.

2. FRAUDULENT CONVEYANCES—EVIDENCE—INTENT OF ONE PARTY.

Evidence that grantors contemplated a fraud in making a conveyance is inadmissible in an action to set aside their conveyance as fraudulent, unless ex-

pressly received as evidence against the grantors, but not as against their co-defendant, the grantee. Per Ward, J.

Appeal from a judgment on report of referee.

Action by Willis J. Benedict, as receiver of the property of William H. Eldridge, against said William H. Eldridge and others, to set aside a deed as in fraud of creditors. There was a judgment for plaintiff, and defendants appeal. Affirmed.

The facts, as stated by Mr. Justice WARD, are as follows:

·On the 12th of January, 1887, the defendant William H. Eldridge, being in need of money and pressed by debts, with Caroline, his wife, conveyed to the defendant George Eldridge a farm in Elma, Erie county, N. Y., containing 39.16 acres of land, subject to two mortgages on the property, amounting to $2,604.18. The consideration mentioned in the deed was $500. The land was worth at the time about $4,000. The conveyance was duly recorded in Erie county. The real consideration for the conveyance was as follows: George assumed to pay certain debts of William, amounting to $130, and to pay a claim of Caroline (William's wife) of about $375, which originated in 1876 and upon which interest had accrued since, and $500 for which George gave his note, and afterwards paid, all of which amounted, with the mortgages and interest, to over $3,900, or the value of the property. George performed this agreement. The only consideration received by Caroline for uniting in the conveyance, and thereby releasing her inchoate right of dower therein, was the agreement to pay her claim as aforesaid. At the time of the conveyance, William was indebted to Abraham Beamas in the sum of about $500, which was due. Beamas, on this indebtedness, recovered a judgment against William in March, 1888, for $520.86. Execution was issued on this judgment, and was returned unsatisfied. Proceedings supplementary to the execution were taken, which resulted in the appointment of the plaintiff herein as receiver of the property of William. The receiver had leave to bring this action, which was commenced in October, 1888, to set aside the conveyance to George, as fraudulent as to the·creditors of William. The action was tried before a referee, and resulted in a judgment on January 19, 1893, to the effect that the conveyance was fraudulent and void as against the lien of Beamas' judgment, and that such judgment was a lien upon the lands prior to the deed from William to George. There were chattel mortgages upon the personal property of William, one held by Beamas. William made out to George another chattel mortgage upon his horses, teams, and other personal property, to secure the payment of and as collateral security for the $500, which he filed in the town clerk's office of the town of his residence. George testified that he had no knowledge of this mortgage, and never saw it until it was presented upon the trial, and it was not shown that he had any such knowledge except that it appeared that he had some knowledge of a chattel mortgage that his brother had executed and filed, but he. supposed that it secured some old debts that William owed him. The bona fides of the claim of the wife was sharply contested upon the trial, and it appeared to be a very important feature in the case.

Argued before HARDIN, P. J., and FOLLETT, ADAMS, WARD, and GREEN, JJ.

Norris Morey, for appellants.
Charles F. Tabor, for respondent.

FOLLETT, J. Assuming that the rulings at folios 905 to 908, standing by themselves, were erroneous, they do not require a reversal of the judgment. George Eldridge, the alleged fraudulent· grantee, had testified to what his brother William H. Eldridge, the alleged fraudulent grantor, had told him in respect to the arrangement with Mrs. Dennison. George Eldridge had also testified that he knew about the arrangement with Mrs. Dennison, and that he received his information from her, and heard the matter talked in the

family, in the presence of the wife of William H. Eldridge. The fact which was offered to be proved at folio 907, that he had frequently heard Mrs. Dennison make the statement in the presence of the wife of William H. Eldridge, would not strengthen the case. The fact excluded at folios 905 to 908 had been testified to by George Eldridge.

It is urged that it was error to receive certain testimony tending to show that the wife of William H. Eldridge had no just claim against him. This evidence was competent. Beuerlien v. O'Leary, 149 N. Y. 33, 38, 43 N. E. 417. It was competent to show that William H. and Caroline R. Eldridge contemplated a fraud, but such evidence is not sufficient of itself to justify the conclusion that the grantee took his conveyance with a fraudulent intent, or with the knowledge of the grantor's fraudulent intent. The grantor's fraudulent intent and the grantee's fraudulent intent must be established, as they were in this case, very conclusively. The intent of either may be shown by evidence which does not necessarily establish the fraudulent intent of the other. This case was carefully tried; the facts are fully found; and the evidence fully justifies the conclusion that the conveyance was fraudulent as against creditors.

The judgment should be affirmed, with costs. All concur, except WARD, J., dissenting.

WARD, J. (dissenting). One of the questions seriously litigated upon the trial was as to the existence and bona fides of the claim of the defendant Caroline Eldridge, the wife of William, to an equitable lien upon the farm for moneys that had been advanced to her in 1876 by Aurelia Dennison, the stepmother of Caroline. Upon this subject the referee found as follows, being his eighth finding of fact:

"I further find that at the time [when the deed was made from William to George] it was agreed between the defendants George and William * * * that the said George should pay to Caroline the sum of about $375, with interest from 1876, amounting in all to about $600, and that such amount should be considered a part of the consideration for said real estate. I find the facts in regard to this to be that in the year 1876 Aurelia Dennison, the stepmother of said Caroline, went to live with the defendant William, and that she did so live with him in his family thereafter and remainder of her life, she dying in and about the year 1885; that, at the time Aurelia Dennison commenced living with William, she owned a mortgage, upon which there was unpaid about the sum of $350; that as a part consideration for her support, and for fitting up a room for her in William's house, she agreed with William and his wife that they should have the said mortgage; that William sold said mortgage, receiving therefor the sum of about $340; that the proceeds of said mortgage were used largely, if not entirely, in fixing up a room in his house for Aurelia Dennison, and in repairs upon said house. The evidence is entirely insufficient to satisfy me that there was any understanding or agreement between Aurelia, William, and his wife that Caroline was to have the sole benefit of said moneys, or any benefit, except as might indirectly come to her by reason of the improvement and repairs to the buildings, and I therefore find that there was no such understanding or agreement. I find that Caroline had no claim or lien, legal or equitable, upon the premises in question, for or on account of the proceeds of the said mortgage. I further find that the defendant George Eldridge was aware of the facts, at the time of the conveyance of said property to him, attending the receipt of said moneys by said William Eldridge, and that the said Caroline had no legal or equitable claim upon the premises in question. * * * I find that, soon after the conveyance to George Eldridge, he agreed with Caroline that he should have two years in which to pay off said sum of $600; * * * that

on the 1st day of April, 1889, he executed two notes [to her], one for $64, with interest, and one for $600, with interest, both notes being payable in six months after date. I find that said notes were afterwards paid by said George Eldridge."

The referee also finds, in the sixth finding of facts, that:

"The defendant George Eldridge accepted said deed with knowledge that said deed was made and delivered for the purpose of hindering, delaying, and defrauding the creditors of the said William H. Eldridge out of and in the collection of their debts, and to assist the said William H. Eldridge to that end, and with knowledge that it was made and delivered by them with the intent and for the purpose of hindering, defrauding, and delaying the said Abraham Beamas out of and in the collection of his debt against the defendant William H. Eldridge, for the collection of which he had then commenced an action in the supreme court."

Upon the trial, a Mr. Dennison (who executed the mortgage to the stepmother), William, and his wife all gave evidence tending to sustain the defendants' contention that Caroline was to have the money as her own from her stepmother, and that William should secure her for it in some manner upon the property upon which the money was expended. The stepmother had lived at William's house before, and had had difficulty with him, and refused to have any dealings with him in relation to her stay thereafter in his family. The plaintiff gave no direct testimony to overthrow this proof, but several witnesses were sworn, who did the repairing of the house, and furnished the materials therefor, as to certain acts of William in employing them and paying them, and his declarations in regard thereto made in 1876, tending to show that the improvements and repairs were matters controlled by him and for himself, and not in the interest of his wife.

We have stated enough of the case and the evidence to show the importance of certain rulings and exceptions upon the trial of which the appellants complain upon this review, which we will now consider.

On the redirect examination of the defendant George Eldridge, he having been interrogated on the direct and the cross-examination as to the claim of Caroline, and it having appeared that before the death of the stepmother he had been to William's house, and met the stepmother and Caroline, he was asked by his counsel:

"Q. Did you ever hear the old lady, in the presence of Mrs. Eldridge, say anything about letting Mrs. Eldridge have $375? (Objected to by the plaintiff's counsel, as incompetent.) By the referee: You may prove by this witness, if he were present at the time of the transaction in which the gift was made, if it was made, what was said and done between the parties; but you cannot prove by him any statement made by any of the parties subsequent to the transaction. By the defendants' counsel: I except to the ruling of the court. I offer to prove by this witness that he frequently heard Mrs. Dennison say, in the presence of William's wife, and also heard his wife say in the presence of Mrs. Dennison, that she (Mrs. Dennison) had let Mrs. Eldridge have the $375, or the mortgage representing it, and that Mrs. Eldridge was to keep the old lady during her life. (Objected to by plaintiff's counsel. Objection sustained, and the defendants' counsel duly excepted.)"

The effect of this ruling excluded all information which the defendant George Eldridge may have obtained subsequent to 1876, and before the alleged fraudulent transaction between his brother and himself, as to the conveyance of the property. This was plainly error. The defendant George Eldridge being charged in the

action with fraud in conjunction with his brother in relation to this very matter of Caroline's, it was competent for him to show that he acted in good faith, having received information and learned facts from the parties concerned which tended to prove the bona fides of the claim of Caroline and the justice of its payment.

It is conceded in the case that George paid a valuable consideration for the property deeded to him. Indeed, what he paid and what he assumed to pay and was bound to pay if he kept the property was equal to the value of the property. It was not sufficient for the plaintiff to show that William (the grantor) had been guilty of fraud in the transaction, but he must show that the defendant George had been guilty of a fraudulent intent, or that he took with notice of the grantor's intent to defraud. Jackson v. Mather, 7 Cow. 301; Waterbury v. Sturtevant, 18 Wend. 353; Carpenter v. Muren, 42 Barb. 300; Zoeller v. Riley, 100 N. Y. 108, 2 N. E. 388, and cases there cited. And the defendant George, on the question of good faith, was entitled to give the evidence offered, and to show, if he could, that he diligently made inquiries, and from the result believed that Caroline had a just claim which should be paid to her upon the sale of the farm. Oberlander v. Spiess, 45 N. Y. 175; Norton v. Mallory, 63 N. Y. 438; Abb. Trial Ev. 739, subd. 9, and cases cited.

A number of exceptions were taken by the defendants upon the trial to evidence offered by the plaintiff with regard to the wife's claim. The objection made by the defendant George Eldridge in each instance was that it was not competent as against that defendant. These objections were overruled. The evidence offered related to the transactions connected with the wife's claim that occurred in 1876, of which the following are instances: Richard Christy testified that he was a carpenter and joiner, and made repairs on the dwelling house of William in 1876, and then he testified, under this objection, that William paid him for the work, and that the amount of the bill was $23.63. John Leignler testified that he was in the business of selling lumber, manufacturing doors, etc., and that he recollected of William Eldridge's buying some building material of him in 1876, and then produced a book of account, and fixed a date thereby, and further testified to a conversation with William Eldridge in regard to the account, and that he settled with William, and took his note for the account. John Knauber testified that in 1876 he was in the lumber business, and sold to William lumber during that year, and that he had a conversation with him, and the following proceedings occurred:

"Q. What did he say on the question of buying this lumber? (Objected to as incompetent and immaterial, and especially on behalf of George Eldridge and the wife of William H. Eldridge, and being no evidence against them. Objection overruled, and defendants' counsel duly excepted.) A. He said he wanted to put up a house, or repair it. I forget whether it was building or repairing. I furnished him with both lumber and windows and many such articles."

And then the witness was allowed, under the same objection, to testify that he had made a charge in his books for such lumber against William Eldridge, specifying the amount. Another witness

(Michael Ansteth) was permitted to testify to the same thing. It was upon evidence of this character (if upon any) that the learned referee must have based his findings that the defendant George Eldridge had knowledge of the transaction which occurred in 1876. And we must regard this class of evidence as having been important in the judgment of the referee in reaching his conclusions in the case. Conceding that this evidence was competent as against the defendant William Eldridge, much of it was certainly incompetent as against the defendant George Eldridge, who was not shown to have any personal knowledge of these transactions (except that he knew generally of improvements on the house), or any notice thereof; nor did the plaintiff propose to show in connection with this evidence that he expected to prove such knowledge or notice. The only way that George could protect himself upon the trial as against the effect of this evidence was to make the objections that were made through his counsel, and it was then the duty of the referee to indicate by his ruling that it was received only as against the defendant William. His failure to do so was an indication that he received this evidence as against all of the defendants. The learned referee, in some of his previous rulings, had held that he admitted evidence of the transactions of William and Caroline against themselves, but that they were not competent as against George, thus recognizing the proper rule of action in such cases. The error might have been cured had the referee indicated in any manner in his decision that this evidence was not considered in determining whether the defendant George had been guilty of fraud in the transaction or in any manner as against him, but we have no such indication. We must therefore assume that he regarded such evidence as binding upon George, and that it was material.

In jury cases the trial court, on request, in an action against two or more co-defendants, in its charge to the jury, will limit the proof to the defendant as against whom it was properly given. Lewis v. Lee Co., 66 Ala. 460; Whart. Ev. § 1204. 1 Greenl. Ev. (15th Ed.) p. 249, says that the admissions of one of several parties on the same side are not admissible to affect the others, unless there is some joint interest or privity in design between them. And Wharton, in section 1204, supra, says:

"A plaintiff, unless there be proof of confederacy on the part of the defendants, cannot use the admission of one defendant against another. * *. * Such statements as are a part of the res gestæ are, of course, receivable. Hence, though the declarations of co-trespassers, when a narrative of past events, are inadmissible against each other, such declaration during the execution of the trespass are admissible as part of the res gestæ."

And, again, he says, at section 1206:

"An admission of a co-conspirator in any way coincident with and explanatory of a conspiracy during its continuance is admissible. A narrative after the conspiracy, so far as concerns the subject-matter of the declaration, is terminated, is inadmissible."

It will be observed that the transactions thus proved against George Elridge occurred 12 years before the sale of the farm in question from William to George; and while the declarations and

acts of these parties as against each other that occurred at the time of or in connection with the sale of the farm may have been receivable as a part of the transaction of the assumed fraud, after some evidence had been given tending to show a fraudulent combination, it certainly was incompetent, as against the defendant George Eldridge, to show these transactions of William long anterior to that time. And see Indemnity Co. v. Gleason, 78 N. Y. 503. The result of these rulings by the referee was to deprive the defendant George Eldridge, on the one hand, of important evidence to establish his good faith in regard to the claim of Caroline, and, on the other hand, to charge him with transactions with which he was not connected, that may, in the judgment of the referee, have shown that such claim was fraudulent.

The respondent's counsel refers to the well-known rule in equity actions that exceptions to evidence will be disregarded unless the appellant can show that injustice has been done upon the whole case, or that the ruling complained of may have affected the result. Power Co. v. Tuerk, 92 Hun, 69, 36 N. Y. Supp. 384, and cases cited. This rule does not aid the plaintiff in the case at bar, for there it appears that the erroneous ruling may have affected not only the result, but probably did so. The claim of the defendant George Eldridge is that he has fairly met the plaintiff's case, and defeated it by a preponderance of evidence. The claim of the defendant William H. Eldridge is that he has disposed of all the proceeds of the sale of his farm in payment of his debts, and, as they were not sufficient to pay all of his debts, he had the right to pay such creditors as he prefers. Bedell v. Chase, 34 N. Y. 386.

A new trial should be ordered, with costs to abide the event, and before another referee.