■ SYDELLE C. COOPERSMITH, Appellant, v RICHARD L. GOLD et al., Respondents. [636 NYS2d 399] —In an action to recover damages for psychiatric malpractice, the plaintiff appeals from a judgment of the Supreme Court, Rockland County (Lefkowitz, J.), entered May 4, 1993, which, upon a jury verdict, is in favor of the defendants and against her dismissing the complaint.

Ordered that the judgment is affirmed, with costs.

The plaintiff commenced this action to recover damages from the defendants, alleging, *inter alia*, that the individual defendant psychiatrist (hereinafter the defendant) committed malpractice by engaging in a sexual relationship with her while she was his patient. The defendant essentially conceded that engaging in sexual relations with a patient would constitute malpractice, but denied that any sexual or otherwise improper relationship existed between the parties. After a lengthy trial, the jury rendered a verdict in favor of the defendant, specifically determining, *inter alia*, that an improper relationship between the parties had not existed. This appeal by the plaintiff ensued.

Contrary to the plaintiff's contention, the Supreme Court properly rejected her requests during her case-in-chief to present the testimony of other women who would allege that the defendant also engaged in sexual relations with them while they were his patients. "A general rule of evidence, applicable in both civil and criminal cases, is that it is improper to prove that a person did an act on a particular occasion by showing that he did a similar act on a different, unrelated occasion. (See Richardson, Evidence [10th ed], §§ 170, 184.)" (*Matter of Brandon*, 55 NY2d 206, 210-211; *see, Kourtalis v City of New York*, 191 AD2d 480). While evidence of previous similar conduct may be admissible in a given case upon proof that one of the narrow exceptions to the general rule applies (*see, Matter of Brandon, supra; People v Molineux*, 168 NY 264), no such showing was made in the matter before us. The plaintiff's suggestion that the proffered testimony should have been permitted pursuant to the common scheme or plan exception is without merit. Indeed, it is clear that these alleged similar instances, assuming they actually occurred, "were no more than 'separate and independent transaction[s] entered into as the occasion arose and not in pursuance of any preconcerted general plan or design' (*People v Grutz*, 212 NY 72, 79, *supra*)" (*Matter of Brandon, supra*, at 213). Moreover, the proffered testimony failed to satisfy any other exception to the rule precluding the admission of such evidence, and our dissenting colleagues concede that this ruling by the trial court was correct.

Similarly, the Supreme Court did not err in permitting the defendant to exhibit the surgical scars on his abdomen to the jury during the presentation of his direct case. The plaintiff had previously testified that even though she had engaged in a multiyear sexual relationship with the defendant, that she had

seen him without his shirt on, and that she had performed countless acts of fellatio on him, she never observed the presence of any scar above his waist. While "it is axiomatic that a witness may not be contradicted by the introduction of extrinsic evidence regarding collateral matters for the sole purpose of impeaching his credibility" (*People v Strawder*, 106 AD2d 672, 673), "the question of whether a matter is collateral or not must be determined under the particular circumstances of each case" (*People v Medina*, 130 AD2d 515, 516). Contrary to the plaintiff's contention, the defendant's physical appearance was not a mere collateral matter; rather, this evidence went to the central issue in this case—whether the parties engaged in a sexual relationship (*see generally, People v Knight*, 80 NY2d 845). Accordingly, the defendant was properly permitted to exhibit his torso to the jury and to thereby attempt to cast doubt on the plaintiff's assertion that such a relationship existed.

The plaintiff and the dissent further maintain that the trial court erred in refusing to reopen the case to permit the plaintiff to call the alleged former patients as rebuttal witnesses. However, it is well settled that "[t]he question of whether to permit the introduction of rebuttal evidence rests within the sound discretion of the trial court and the court's decision in that regard should not be disturbed on appeal absent a clear abuse or improvident exercise of discretion" (*Capone v Gannon*, 150 AD2d 749, 750; *see, Saleh v Sears, Roebuck & Co.*, 119 AD2d 652). The plaintiff contends that these witnesses would have testified that they also had sexual relations with the defendant and did not observe his scars. However, as accurately noted by the trial court, the question of whether these other alleged former patients observed the defendant's scars on other occasions is clearly collateral to the issue of whether *the plaintiff* observed them. Furthermore, the plaintiff had already attempted to explain her lack of observation in this regard by testifying that the defendant always kept his boxer shorts on during their alleged hurried sexual trysts in his office. Unlike the dissent, we do not find this particular aspect of the plaintiff's testimony inherently incredible or contrary to human knowledge and experience, especially in view of the surreptitious nature of these purported sexual encounters and the unusual physical setting in which they allegedly occurred. More significantly, the proffered rebuttal testimony simply would not have rehabilitated the plaintiff's credibility or rendered her account of her particular relationship with the defendant any more likely. Rather, the proposed evidence would only have unduly prejudiced the defendant by improp-

erly suggesting that he had a propensity for engaging in sexual relationships with patients (*see generally, Matter of Brandon*, 55 NY2d 206, *supra*), a suggestion which the trial court accurately found could not be avoided by the mere administration of a limiting instruction to the jury. Moreover, in evaluating the proffered testimony, the jurors would first have been required to determine whether these other alleged sexual relationships actually existed. Hence, introduction of the proffered testimony would have transformed the trial into a complex series of mini-trials regarding the validity of the rebuttal witnesses' accounts, all for the legally impermissible purpose of demonstrating that the defendant purportedly had engaged in improper relationships with other patients on other occasions and therefore must have acted in the same fashion with respect to the plaintiff. Inasmuch as the prejudicial effect of the proposed rebuttal testimony and the unnecessary procedural complications it would have created far outweighed any negligible probative value which it might have had with respect to the genuine issues in this case, the trial court did not improvidently exercise its broad discretion in refusing to reopen the case to permit this collateral evidence (*see, e.g., Capone v Gannon, supra; Saleh v Sears, Roebuck & Co., supra*). In this regard, the plaintiff's reliance on *Roy v Hartogs* (85 Misc 2d 891) is misplaced. The issue sought to be resolved in *Roy* dealt with the defendant's claim of impotency, a matter central to the plaintiff's claim of sexual intimacy because it raised the defense of physical impossibility. On the other hand, in this case the plaintiff sought to produce witnesses merely to buttress her contention that other claimed sexual partners also did not observe certain body scars on the defendant. As previously noted, this is purely a collateral issue.

The trial court did commit an error while marshalling the evidence by incorrectly stating that the defendant had denied ever having sex with other patients in his office. However, the error was clearly harmless. The court carefully instructed the jurors that their recollection of the evidence was controlling and, in any event, no issue regarding whether the defendant engaged in sexual relations with other patients was ever brought to the jury's attention. Accordingly, the court's misstatement on this irrelevant matter clearly had no bearing on the jury's verdict.

The plaintiff's remaining contentions are unpreserved for appellate review and, in any event, lack merit. Bracken, J. P., Sullivan and Pizzuto, JJ., concur.

Miller, J., dissents and votes to reverse the judgment ap-

pealed from and grant a new trial with the following memorandum in which Friedmann, J., concurs.

I do not concur in the majority's conclusion that the judgment in favor of the defendant should be affirmed. Rather, I find reversible error in several rulings of the trial court which, in the aggregate, clearly deprived the plaintiff of a fair trial. Consequently, I would reverse the judgment in the defendant's favor and grant the plaintiff a new trial.

The defendant Richard Gold is a psychiatrist. The plaintiff sought out the defendant's professional help in 1980 at a time when her marriage was failing, her children were reaching adulthood, and she was experiencing an "identity crisis" since the only roles she had known for many years, those of wife and mother, were being drastically altered. She alleged that during the course of her treatment, the defendant encouraged her, *inter alia*, to engage in extramarital affairs. Additionally, she alleged that following a February 1981 session, she and the defendant embarked upon a sexual relationship that lasted until the late summer of 1985, which only ended after a tumultuous confrontation in the defendant's office involving the plaintiff, the defendant, and the defendant's wife.

The defendant's version of the events was markedly different. According to the defendant, he provided psychiatric treatment for the plaintiff from October 1980 until April 1981, when their professional relationship ended. Thereafter, while the plaintiff pursued her own postgraduate degree in psychology, the defendant alleged that he maintained a platonic relationship with the plaintiff, acting as her de facto mentor. He denied ever engaging in a sexual relationship with the plaintiff.

Following the dismissal of two of the plaintiff's three causes of action (*see, Coopersmith v Gold*, 172 AD2d 982), the matter proceeded to trial on the malpractice claim. The defendant essentially conceded that a sexual relationship between a psychiatrist and a patient would constitute professional malpractice. His defense was that no such relationship occurred in this case; that the relationship was a creation of the plaintiff's imagination. Following a 15-day trial (*see, Coopersmith v Gold*, 156 Misc 2d 594), the jury credited the defendant's account and the court denied the plaintiff's motion to set aside the verdict. Because several evidentiary rulings denied the plaintiff a fair trial, I would reverse.

Prior to trial, the plaintiff made a motion in limine seeking to admit during her case in chief, testimony of three other women who were allegedly patients of the defendant and who were subjected to his sexual advances in the office (*see, Matter*

*of Gold v Chassin*, 215 AD2d 18). The plaintiff averred that the testimony of these witnesses would demonstrate that they all engaged in sexual intercourse with the defendant while they were his patients. The court did allow the plaintiff to testify that the defendant allegedly admitted to her that he had engaged in sexual relations with other women in his office. The court, however, refused to allow the plaintiff to introduce the actual testimony of the defendant's other female patients, finding that the proposed evidence would be in violation of the general rule against the admission of evidence of prior bad acts and did not fall within any exception to that rule. I agree with the majority's conclusion that even assuming that the probativeness of this independent collateral evidence outweighed its prejudicial impact, it was not admissible under a *Molineux* analysis (*see, People v Molineux*, 168 NY 264) since the issue of the defendant's intent was irrelevant to whether he did or did not engage in a protracted sexual relationship with the plaintiff. Similarly, the introduction of independent proof that the defendant had sex with other patients would not necessarily demonstrate the existence of a common plan or scheme (*see, Matter of Brandon*, 55 NY2d 206) nor did it come within any other *Molineux* exception (*cf., MacClements v LaFone*, 104 NC App 179, 408 SE2d 878; *Patricia C. v Mark D.*, 12 Cal App 4th 1211, 16 Cal Rptr 2d 71; *Copithorne v Framingham Union Hosp.*, 401 Mass 860, 520 NE2d 139). Therefore, the court's ruling in limine was not erroneous. The court's adherence to its ruling in the face of subsequent events was, however, improvident.

On her direct case the plaintiff testified that she became aware that prior to the parties' alleged relationship, the defendant had undergone an ileostomy, the surgical removal of much of the large intestine, which resulted in him wearing a prosthetic pouch on the outside of his abdomen into which digestive waste products accumulated. She recounted that on one occasion in May 1983, the defendant displayed his ileostomy to her and that she saw a large white adhesive patch resembling a "Band-Aid". She testified that while she was aware of the ileostomy, except for the one occasion he displayed it to her, it was always concealed by the defendant's boxer shorts which he never removed during the four years of their sexual relations. Indeed, the plaintiff testified that their sexual relations were generally similar in nature, mostly oral sex and very quick intercourse in the office, and that the defendant always kept his boxer shorts on. She further testified that she could not recall being aware of any scars on the defendant's body above the waist or "from the edge of the boxer shorts up".

On his direct case, the defendant described the series of scars on his abdomen as a result of his operation, consisting of two one-inch drain scars on either side of the abdomen and a ten-inch scar that extended from four inches above to six inches below the defendant's waist running one inch to the left of his navel. There was no testimony as to which or how much of these scars were concealed by the defendant's flesh-colored adhesive patch. The court permitted the defendant, over the plaintiff's objection, to exhibit his scars to the jury.

The sole purpose and obvious implication of this dramatic exhibition was to prove that the plaintiff had fabricated the entire affair by suggesting that if she had engaged in a four-year long relationship with the defendant, she could not have missed seeing the prominent scars. The majority contends that the evidence of the defendant's physical condition and the exhibition of his prominent abdominal scars were properly received in evidence since they were not merely collateral but went to the very heart of the case. Indeed, the plaintiff's failure to observe those scars weighed heavily upon her credibility, and in that respect, did go to the very heart of this case which depended entirely on the jury's assessment of the parties' credibility. The significance of the defendant's exhibition of these scars and its devastating effect on the outcome of this case cannot therefore be over-estimated. In my view, the court's denial of the plaintiff's application to offer rebuttal testimony which was essential to rehabilitating her credibility was error, which along with other error requires reversal and a new trial.

The plaintiff testified prior to the defendant's testimony and exhibition of his scars that the parties engaged in a four-year long intimate relationship of oral sex and intercourse, conducted consistently and regularly in the defendant's office. In the course of her testimony, the plaintiff noted that the defendant never removed his boxer shorts while engaging in sex. She also testified that she never observed any scars on his abdomen. While the plaintiff's references to the defendant's predisposition to wearing his boxer shorts during sex might serve to explain her failure to observe his scars under certain peculiar circumstances, no such circumstances explaining her failure to observe his physical condition exist here. The alleged affair, continuing for four years, was neither purportedly conducted in a darkened room or a cramped space. Nor did the plaintiff suffer from any visual disability. As to the "surreptitious" nature of the affair referred to by the majority, it was no more surreptitious than one would reasonably expect of an illicit affair between a married psychiatrist and patient where

one would assume that the parties would have become familiar with each other's physical appearance. Therefore, the plaintiff's explanations, standing alone were bound to be unpersuasive. Assuming that the jurors believed that the defendant persistently wore his boxer shorts during the course of this lengthy affair, wouldn't those jurors have reasonably expected that at some point in time the defendant would have failed to conceal his scars with his shorts? Wouldn't the jurors have expected that the shorts would inevitably have moved, permitting the plaintiff to observe the obvious scars which the defendant had indicated to the jury extended four inches above and below his waist? I disagree with the majority's view that an average, reasonable juror would not find the defendant's alleged sexual *modus operandi* to be so unique as to defy their common knowledge and experience. In my view a reasonable, average juror would find the described sexual behavior highly unusual, unlikely, and that the plaintiff's testimony was therefore patently incredible absent other explanation.

Therefore, it was appropriate for the plaintiff to seek to introduce rebuttal testimony from other females who had engaged in sex with the defendant that he similarly never removed his boxer shorts and that they also never saw the scars. The defendant's exhibition of his scars placed the visibility of his physical condition during his performance of sex acts directly in issue. Accordingly, the court should have permitted the plaintiff to introduce appropriate rebuttal evidence as "[i]t is proper to offer evidence, in rebuttal, to sustain the character of [a] witness * * * who [has] been impeached, or to corroborate testimony which has been discredited" (Richardson, Evidence § 517 [Prince 10th ed]). The court's refusal to allow the plaintiff to offer the rebuttal testimony of the other women deprived her of a fair trial.

The court's denial of this application was based upon its finding that the subject matter of the proposed rebuttal testimony was collateral. However, the defendant's exhibition of his scars doomed the plaintiff's credibility and her case to failure. As stated above, a reasonable jury would not believe that a sexual affair could continue for over four years without the plaintiff's having seen highly visible, prominent scars which the defendant exhibited to the jury or that the plaintiff's bald explanation that the defendant always, throughout the four years of a steamy relationship, wore his boxer shorts each and every time they had sexual relations. Once the defendant displayed his scars to support his claim of fabrication, he opened the door to rebuttal on the issue of his concealment of

those scars from the plaintiff, thereby placing this issue in controversy. Fundamental fairness dictates that the court should have permitted the plaintiff, on rebuttal, to demonstrate that other women had similar experiences with the defendant (*see, Roy v Hartogs*, 85 Misc 2d 891).

This proposed testimony of two unrelated witnesses who had no prior relationship with the plaintiff or interest in this case was the only possible avenue by which the plaintiff could prove that the defendant concealed the scars from her, as from others, by always wearing his shorts and that he conducted their relationship in such a way that the jury would not believe. The testimony of the other witnesses describing the defendant's unique, even bizarre *modus operandi;* always wearing boxer shorts during sexual relations, converts the plaintiff's otherwise incredible explanation to one jurors might well believe. Although the testimony of these witnesses would have been prejudicial to the defendant, it was he who opened the door and, thus, he should not be heard to complain that the plaintiff's rebuttal of that evidence, which was so prejudicial to her, would unfairly prejudice him. This testimony should have been received with limiting instructions tailored to delete any reference to the women's status as patients so as to minimize its prejudicial effect.

In this context, *Roy v Hartogs (supra)* is persuasive. In that case the defendant psychiatrist, facing similar allegations of sexually abusing a patient, testified that he could not have had relations with the plaintiff because of a hydrocele, a condition which allegedly rendered him impotent. The court permitted the plaintiff to introduce rebuttal testimony from another patient who testified that she had engaged in a contemporaneous sexual relationship with the defendant. The court in the instant case found *Roy v Hartogs* to be distinguishable since the defense evidence there, that the defendant was impotent, was dispositive. However, in the instant case, by permitting the defendant to exhibit his scars, the court caused the issue of their concealment to gain such critical significance that it effectively destroyed the plaintiff's credibility. The court's denial of the plaintiff's rebuttal request deprived her of her only meaningful opportunity to rehabilitate her credibility and to establish her case.

Finally, I agree with the majority's conclusion that the court clearly committed error when it misstated in its charge that the defendant had denied ever having sexual relations with other patients in his office. However, I do not agree that the error was harmless. The defendant never offered such testimony

and the court's instruction incorrectly contradicted the plaintiff's uncontroverted testimony that the defendant had admitted to her that he had indeed had sexual relations with other women in his office. The court's erroneous charge, in effect, removed this issue from the jury's consideration. Moreover, the court's misstatement only compounded the prejudice to the plaintiff of its exclusion of her proffered rebuttal evidence. It served to unfairly bolster the defendant's credibility in a case in which credibility was the central issue by attributing to the defendant a denial he had never uttered, one that the plaintiff was ready, willing, and able to disprove, if only the court had permitted her to do so.

As a result of the foregoing errors, I find that the plaintiff did not receive the fair trial to which she was entitled. Accordingly, I would reverse the judgment and grant the plaintiff's motion for a new trial.